374 A.2d 774.
BERTHA D. EVANS *et al. vs.* FRANK LIGUORI *et al.*

JUNE 15, 1977.

PRESENT: Bevilacqua, C. J., Paolino. Joslin, Kelleher and Doris, JJ.

KELLEHER, J. In 1968, the plaintiff, on behalf of herself and her minor children, instituted a wrongful death action against the town of Westerly and five of its police officers. A Superior Court jury returned verdicts in favor of four of the officers and against the fifth officer, Captain Gabrielle, and the town. Each of the "against" verdicts was in the amount of $21,000. Before submitting the case to the jury, the trial justice had reserved his decision on the defendants' motions for a directed verdict. Once the jury had returned its verdicts, the trial justice granted the motions for a directed verdict. Subsequently, the plaintiff moved for a new trial as to the four police officers and an additur against the fifth officer and the town of Westerly. The officer who had been found liable also moved for a new trial. All such motions were denied, and on this pending appeal the only questions before us concern the propriety of the grant of the directed verdict and the denial of the motions for a new trial and the request for an additur. Since our immediate concern is the grant of the directed verdict, our review of the evidence pre-

sented at trial will be in the light most favorable to the plaintiff.

The pertinent facts are as follows. During the late morning of January 15, 1968, John J. Evans, a 49-year-old retired Army major, drove his 16-year-old daughter, Nicole, to the town of Westerly to a branch of the Registry of Motor Vehicles, where she was going to obtain a driving permit. Evans at this time was suffering from diabetes mellitus. This condition was of a long-standing nature and so serious that in 1953 he received a medical discharge from the Army. He visited the Veterans' Administration Clinic for periodic checkups and took daily self-injected doses of insulin.

While driving to Westerly from his Warwick home, Evans had acted in a disoriented and confused fashion. When he arrived in Westerly at about 2 p.m., Evans parked his car in front of the town's police station, and in the process he allegedly backed into a car owned by one of the police officers. Evans left his car, walked over to an icy sidewalk, and, as he did so, he slipped and fell. The defendant, Captain Gabrielle, observed what went on, and he issued an order that Evans be brought into the station. The captain, believing Evans to be drunk, ordered him into the interrogation room and requested the daughter to bring her father some coffee. The daughter left the station to obtain the coffee and call her mother. When she returned, she found her father walking out of the station. She notified the captain of this fact, and he dispatched two of his officers outside to retrieve him. Apparently, Evans had missed the first four steps on his way out and was lying on the ground when the officers arrived. A struggle ensued, Evans was handcuffed, and put into a cell. At this point Nicole informed Captain Gabrielle that her father was a diabetic and sick.

When Evans was put into the cell, the officers removed the handcuffs but permitted the prisoner to retain his belt and shoelaces. There was testimony that the standard operating procedures in effect at the Westerly Police Station called for the removal of such articles before a person was locked up.

Evans' wife arrived at the station at 4:30 p.m. In the interim the captain had temporarily left the station, and Sergeant Algiere was manning the desk. Mrs. Evans went to see her husband. He asked her to obtain the services of a physician and an attorney. According to the wife, her husband was disoriented, despondent, and had a fruity smell on his breath.[1] The wife showed the sergeant her husband's diabetic card and asked him to contact a doctor. Sergeant Algiere replied that he had a diabetic in his family, but he did not "act like" Evans. After further pleading by the wife, the sergeant "tossed" her a phone book and said that she could seek her own assistance. The wife's attempts to procure aid, either medical or legal, proved fruitless.

The family was becoming upset, and the sergeant recommended that it was time for everyone to take a supper break. According to the sergeant, after supper everyone could return to the station, where there would be an extended discussion about the prisoner's present difficulties. The sergeant assured the family that he would watch out for Evans. The Evans family left the station and went to a local restaurant.

Upon their return, they observed Captain Gabrielle running to the cellblock with a pair of scissors. Evans had apparently looped his belt around the center horizontal bar of the cell door and attempted to hang himself. When

---

[1]There was testimony that the fruity smell was that of acetone. Acetone apparently results when a diabetic's metabolic balance becomes abnormal from the lack of sugar.

Evans was freed, his son administered artificial respiration, but to no avail. Evans was dead, and the scene now shifts from the police station to a Washington County courthouse.

Two doctors testified for plaintiff. The first, a pathologist, had conducted an autopsy on Evans. His pathological diagnosis was that Evans had experienced severe diabetes mellitus with acute congestive heart failure. He could not, however, determine the cause of death. The second medical witness for plaintiff was an internist. In answer to a hypothetical question, he testified that in his opinion Evans was suffering from either too much or too little blood sugar on the day in question. He then noted that diabetics in such a condition may become suicidal and/or disoriented and, therefore, there was a causal connection between his putting the belt around his neck and his physical condition.

Having summarized the pertinent evidence, we now turn to the controlling legal principles. When a motion for a directed verdict is made, the trial court and, as noted earlier, this court on review must consider the evidence in the light most favorable to the party against whom the motion is made without weighing the evidence or considering the credibility of the witnesses and extract from that record only those reasonable inferences that support the position of the party opposing the motion, in this case plaintiff. *Powers* v. *Carvalho,* 117 R.I. 519, 368 A.2d 1242 (1977); *Economou* v. *Valley Gas Co.,* 112 R.I. 514, 312 A.2d 581 (1973); *Hamrick* v. *Yellow Cab Co.,* 111 R.I. 515, 304 A.2d 666 (1973). If there exist issues of fact upon which reasonable men may differ, the trial court has no alternative other than to let the jury decide them.

The trial justice granted the motions for the directed verdict after reaching the following conclusions. There was evidence, he said, that (1) Evans had been assaulted,

(2) a request for medical assistance fell on deaf ears, and (3) a departmental policy requiring the removal of certain articles of clothing was violated. The trial justice concluded that Evans took his belt and hung himself. Having decided that Evans had committed suicide, he then ruled that the suicide was an independent intervening cause and, accordingly, was not the foreseeable result of the police officers' conduct. He specifically found that although there may have been a policy to remove a prisoner's belt to protect him, it was not foreseeable that the failure to take Evans' belt would result in his suicide.

Essentially, plaintiff proceeded under two alternate theories of recovery: (1) the police should have removed Evans's belt, and their failure to do so was the proximate cause of his death; and (2) the police were aware of the prisoner's physical condition and failed to render appropriate medical assistance, thereby resulting in his death. The defendants presented a two-pronged challenge to the two theories. One was that plaintiff had never established the cause of death, and, second, if death was the result of suicide, defendants were absolved because the suicide was the supervening cause. While we take issue with the trial justice's reasoning as to the supervening[2] aspects of the supposed suicide, we cannot fault his ultimate conclusion.

In an action for wrongful death, as is true in any other suit for negligence, it is the plaintiff's burden to establish a causal relation between the defendant's act or omission and the injury. *Presley* v. *Newport Hospital*, 117 R.I. 177, 189, 365 A.2d 748, 754 (1976); 1 Speiser, *Recovery for*

---

[2] On several occasions we have pointed out that while one may not recover for the negligence of the initial wrongdoer when a new and independent force of a responsible third party intervenes, recovery can be had if the intervening cause was reasonably foreseeable. *S.M.S. Sales Co.* v. *New England Motor Freight, Inc.*, 115 R.I. 43, 340 A.2d 125 (1975); *Aldcroft* v. *Fidelity & Cas. Co.*, 106 R.I. 311, 259 A.2d 408 (1969); *Denisewich* v. *Pappas*, 97 R.I. 432, 198 A.2d 144 (1964).

*Wrongful Death* 2d, §2:1 (1975). In most cases, causation is established by showing that but for the negligence of the defendant, the harm to the plaintiff would not have occurred. *Salk* v. *Alpine Ski Shop, Inc.,* 115 R.I. 309, 342 A.2d 622 (1975); Prosser, *Law of Torts* §41 at 236 (4th ed. 1971). Moreover, such causal connection must be established by competent proof. *Sylvia* v. *Gobeille,* 101 R.I. 76, 220 A.2d 222 (1966). In the absence of such proof, a verdict for the plaintiff would be based upon conjecture or speculation, and a directed verdict should have been granted.

Consequently, the threshold question with which we are faced is whether or not, construing all evidence in the light most favorable to plaintiff, a causal connection between the police conduct and Evans' death was established by competent proof. We do not believe so. The reasons for this response now follow.

Expert testimony is not always necessary to establish causation in a wrongful death action.[3] However, in this case plaintiff's recovery rested upon the establishment of one of two specific causes of death, a "foreseeable suicide" accomplished by the utilization of deceased's belt, or death occasioned by the delay or denial of medical assistance to one in need. As to plaintiff's second theory, denial of medical assistance, *James* v. *Sunshine Biscuits, Inc.,* 402 S.W.2d 364 (Mo. 1966), is instructive and persuasive. In *James,* the plaintiff's decedent became ill at work from something she ate and died the next morning. The plaintiff's theory of recovery was that the employer was under

---

[3]Thus, where the facts and circumstances of a case are such that the common knowledge of a jury would allow it to infer the cause of death, no expert testimony would be required. *See Fellows* v. *Farmer,* 379 S.W.2d 842 (Mo. App. 1964) (car wash); *Bell* v. *S. S. Kresge Co.,* 129 S.W.2d 932 (Mo. App. 1939) (stomach pain and illness after ingesting broken glass in a soup).

an affirmative obligation to render medical assistance to the decedent when it learned of her illness, and its failure to do so, and resultant delay, caused her death. In affirming the judgment for the defendant, the court held that the plaintiff's expert testimony did not establish the causation proffered and "it would be improper to permit the jury to infer death due to delayed medical care without the aid of expert testimony, because no layman could know or have any reasonable basis for such inference." *James* v. *Sunshine Biscuits, Inc., supra* at 372. Such is the case before us. Neither of plaintiff's experts testified that Evans' death resulted from the denial of medical assistance. Without such testimony, the jury should not have been able to draw such a conclusion on its own accord.

As to plaintiff's alternative theory that Evans' death was occasioned by his attempted hanging with his belt, we find a similar shortcoming. The pathologist testified there were no broken bones in the neck. Moreover, he specifically testified that he did not have enough information to determine what was the cause of death in light of his pathological diagnosis. The strongest evidence plaintiff has in his favor is that the pathologist would need additional information to determine whether Evans' death was a result of strangulation. The internist testified: "I would say with a reasonable degree of medical certainty that the symptoms Mr. Evans expressed, those of depression, crying, sadness, are consistent with suicidal intent, and that, therefore, there is a close relationship between the symptoms he expressed and the application of a belt around his neck." This witness also testified that Evans' symptoms could result from a low or high blood sugar state in a diabetic. This is not enough to get the question before the jury. The medical expert's testimony merely begs the question of whether or not Evans' death was a result of strangulation.

We have ruled that in Rhode Island, when relying on expert testimony to establish a causal relationship between one's activities and another's injury, the expert must speak in terms of "probability" rather than "possibility."

> "Expert testimony, if it is to have any evidentiary value, must state with some degree of positiveness that a given state of affairs is the result of a given cause. Absolute certainty, of course, is not required. In those cases where expert testimony is relied on to show that out of several potential causes a given result came from one specific cause the expert must report that the result in question *most probably* came from the cause alleged." *Sweet* v. *Hemingway Transport, Inc.*, 114 R.I. 348, 355, 333 A.2d 411, 415 (1975).

Here, the pathologist's testimony was not able to elevate the strangulation theory to the level of even being a possible cause of death.

Since the plaintiff failed to establish a causal relationship between the defendants' conduct and Evans' death, the directed verdicts were properly granted.

The plaintiff's appeal is denied and dismissed, and the judgments entered in favor of the defendants are affirmed.

Petition for reargument is denied.

*Abedon, Stanzler, Biener, Skolnik & Lipsey, Milton Stanzler, Howard I. Lipsey, Jordan Stanzler,* for plaintiffs.

*Hanson, Curran, Bowen & Parks, A. Lauriston Parks, David P. Whitman,* for Anthony Algiere.

*Keenan, Rice, Dolan, Reardon & Kiernan, Leonard A. Kiernan, Jr.,* for the Town of Westerly.

*Cappuccio & Cappuccio, Frank S. Cappuccio,* for Frank Liguori et al and Fred Gabrielle, defendants.