398 A.2d 1133.

JOHN M. MULLANEY *vs.* LEONARD Y. GOLDMAN.

MARCH 9, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

WEISBERGER, J. This is an appeal by the defendant, Leonard Y. Goldman, from a Superior Court judgment entered against the defendant in the amount of $65,829.10 plus interest in an action arising from an automobile accident which occurred on October 13, 1972 in Warwick, Rhode Island. The jury determined that the defendant was 75 percent negligent and awarded damages for bodily injury, medical bills, pain and suffering, and loss of earning capacity.

After the accident, plaintiff was taken to Kent County Memorial Hospital where a laceration in his scalp was sutured and his head, shoulders and hand were x-rayed. On October 20, 1972, plaintiff visited the office of his family physician to have the sutures removed. At that time the family physician's initial diagnosis was that plaintiff had sustained a cerebral concussion. Four days later, plaintiff again visited the family physician and complained of dizziness and numbness in his left hand, and the family physician had additional x rays taken at Kent County Memorial Hospital. In the physician's opinion, the x rays revealed a small undisplaced fracture of the first dorsal vertebra.

The plaintiff was referred to a specialist in orthopedic surgery who first examined him on November 3, 1972. At trial, the orthopedic surgeon testified that at the first visit plaintiff complained of headaches and exhibited acute pain in the base of his neck. Although the orthopedic surgeon

found plaintiff be to neurologically intact, the orthopedic surgeon also testified that x rays taken on the date of the first visit revealed a finding consistent with a small chip fracture of the first dorsal vertebral body. He provided plaintiff with medication and routinely saw plaintiff until April 30, 1973, when the orthopedic surgeon believed that plaintiff's fracture was healed. The plaintiff was, however, referred back to his family doctor for persistent complaints of major headaches.

The family physician also referred plaintiff to a neurosurgeon because of plaintiff's persistent complaints of headaches in the posterior part of the head and the neurological deficit in plaintiff's left arm. On April 23, 1973, the neurosurgeon completed an extensive examination of plaintiff, including an electroencephalogram and brain scan. The neurosurgeon did not see plaintiff again because the brain tests and neurological examination were normal. The plaintiff was therefore returned to the care of his family physician.

The plaintiff was examined by defendant's specialist in orthopedic surgery in November 1972 and July 1973. This specialist testified that new x rays were taken of plaintiff's cervical area, that he did not see a fracture, and that plaintiff's problems were muscular and not skeletal. He did, however, testify that in November 1972 plaintiff had some nerve patchiness in the left arm which was no longer evident by the time of the July 1973 examination. On the other hand, plaintiff's family physician testified that in September 1975 plaintiff was still suffering from the neurological deficit and weakness in the left hand.

The plaintiff's physical maladies continued. On December 2, 1975, plaintiff was examined by a gastroenterologist on referral from plaintiff's family physician who had determined through x-ray examination that plaintiff was suffering from a gastric ulcer. On this date, the gastroenterologist elicited plaintiff's medical history including mention of an ulcer in 1968 and the neck fracture in 1972. The gastroenterologist also recorded, as part of the medical history, plaintiff's feelings of being shaken-up and tense. The plaintiff was subsequently hospitalized for treatment of the ulcer and continued to see the gastroenterologist on an outpatient basis until May 27, 1976.

362

At trial, plaintiff attempted to establish that the 1975 ulcer was compensable because it was proximately caused by feelings of tension produced by the October 1972 accident. We note that the gastroenterologist was the only doctor who treated plaintiff for his 1975 ulcer. We have reviewed the record, however, and have found no testimony was elicited from the gastroenterologist which served to connect causally the accident in 1972 and the ulcer in 1975. Instead, the gastroenterologist was asked the following question on direct examination:

"Q  Doctor, can you tell us, based on a reasonable degree of medical certainty, whether there is any relationship between the history that was given to you by the patient and the condition that you found?"

The answer to this question was stricken, but the gastroenterologist was asked a virtually identical question by the trial justice. In response the gastroenterologist stated:

"I am agreed—glad that you say that because medicine is an art that uses scientific methods, and this is the key of the point, maybe. I will say that as a practitioner of medicine, and with this specialty on this field, I think that this could be a reasonable statement that there is a relationship between the degree or of tension that Mr. Mullaney was having and his ulcer."

A motion to strike this testimony was denied and defendant contends on appeal that the denial was reversible error.[1]

We believe that the trial justice committed prejudical error in denying defendant's motion to strike the gastroenterologist's response. First, the questions did not address the issue of whether plaintiff's 1975 ulcer was the proximate result of the automobile accident. Both plaintiff's counsel and the trial justice asked the gastroenterologist if there was a relationship between plaintiff's medical history and the 1975 ulcer. Clearly, plaintiff's medical history included possible causes for the ulcer other than the accident. Thus, the gastroenterol-

---

[1]We observe that the defendant has not briefed or argued any ground of appeal from the denial of his motion for a new trial. Consequently, we deem that portion of the appeal to have been waived by the defendant, *Calcagno* v. *Calcagno,* 120 R.I. 723, 391 A.2d 79 (1978); *Rhode Island Hosp. Trust Nat'l Bank* v. *Israel,* 119 R.I. 298, 377 A.2d 341 (1977).

ogist's response was irrelevant because he failed to establish any probable causative effect of the accident upon the 1975 ulcer. Quite simply, the response did not tend to establish that the connection between the accident and ulcer was more or less probable. *See Capezza* v. *Hertz Equipment Rental Corp.*, 118 R.I. 1, 371 A.2d 269 (1977). Here the gastroenterologist's response was that he thought there " could be a reasonable statement that there is a relationship between the degree or of tension that Mr. Mullaney was having and his ulcer." This testimony was clearly irrelevant to any connection between the defendant's negligence, which led to the automobile accident, and plaintiff's 1975 ulcer.

In a negligence case, the plaintiff has the burden of establishing that there was a causal relation between the act or ommission of the defendant and plaintiff's injury. *Schenck* v. *Roger Williams General Hospital*, 119 R.I. 510, 382 A.2d 514 (1977). Further, no liability can attach unless defendant's negligence was the proximate, rather than the remote cause, of plaintiff's ulcer, *see Kemplin* v. *H.W. Golden & Son, Inc.*, 52 R.I. 89, 157 A. 872 (1931), and causation is established by competent proof that but for the negligence of defendant the harm to plaintiff would not have occurred. *Schenck, supra; Evans* v. *Ligouri*, 118 R.I. 389, 374 A.2d 774 (1977); *Salk* v. *Alpine Ski Shop, Inc.*, 115 R.I. 309, 342 A.2d 622 (1975). Finally, an expert witness must speak in terms of probability in establishing this connection. *Evans, supra.* As we stated in *Sweet* v. *Hemingway Transport, Inc.*, 114 R.I. 348, 355, 333 A.2d 411, 415 (1975):

> "It is well settled here in this state that when the only evidence offered to establish causal relationship between one person's activities and another's injuries is the testimony of a medical expert, such evidence must speak in terms of 'probabilities' rather than 'possibilities.' [citations omitted] Expert testimony, if it is to have any evidentiary value, must state with some degree of positiveness that a given state of affairs is the result of a given cause. Absolute certainty, of course, is not required. In those cases where expert testimony is relied on to show that out of several potential causes a given result came from one specific cause the expert must

report that the result in question *'most probably'* came from the cause alleged."

The gastroenterologist's response is comparable to the testimony of an internist in *Evans, supra*. There a suit was commenced for the wrongful death of a jailed diabetic who allegedly attempted to hang himself with his own belt, and one theory of recovery was that the death was caused by strangulation. The decedent's wife testified that, while jailed, her husband was disoriented and despondent, and the internist testified that in his opinion the decedent was suffering from either too much or too little blood sugar on the day in question. The internist also noted that diabetics in such condition may become disoriented or suicidal and that consequently there was a causal relation between the decedent's placement of the belt around his neck and his physical condition. Specifically, the internist testified: " I would say with a reasonable degree of medical certainty that the symptoms Mr. Evans expressed, those of depression, crying, sadness, are consistent with suicidal intent, and that, therefore, there is a close relationship between the symptoms he expressed and the application of a belt around his neck.' " *Evans, supra* at 397, 374 A.2d at 778. We concluded, however, that this testimony merely begged the question of whether the death resulted from strangulation, and that the testimony was insufficient to get that question to the jury.

In the present case the gastroenterologist's testimony in issue did not address the question of whether the ulcer was a proximate result of the automobile accident, and we conclude the motion to strike was improperly denied. We must determine, however, whether defendant was prejudiced. The test is whether the evidence reasonably tended to exert influence upon the determination of the real issue in the case. *See Bailey* v. *Huling*, 119 R.I. 250, 255, 377 A.2d 220, 223 (1977); *McBurney* v. *Times Publishing Co.*, 93 R.I. 331, 337, 175 A.2d 170, 173 (1961). When we apply this test in the present case, the prejudice to defendant is obvious. The gastroenterologist was the only expert who testified concerning the cause of plaintiff's 1975 ulcer, and the gastroenterologist's response which was the subject of the motion to strike was plaintiff's only attempt to connect causally the

ulcer and the accident. Certainly this connection was not established by any other testimony of the gastroenterologist. He testified that because plaintiff had an ulcer in 1968, plaintiff had a fertile ground for having another ulcer, but that prior ulcer alone would not account for the 1975 ulcer. The gastroenterologist also testified that a number of factors put together, such as drinking coffee, smoking, and tension could account for plaintiff's ulcer in 1975. Such testimony was clearly insufficient evidence of connection between plaintiff's 1975 ulcer and the automobile accident to warrant the jury's consideration of that ulcer as an element of damages. The jury, however, specifically requested instruction on whether it should or should not award the total amount of the bill for treatment of the ulcer as damages if it felt the accident was a contributing factor to any extent in the development of the ulcer. In response, the trial justice instructed the jury that with respect to the ulcer, plaintiff had to prove that the injury was proximately caused by defendant's negligence.

In light of the jury's request for instruction regarding an award of damages for the 1975 ulcer, we believe that the gastroenterologist's testimony, which was the subject of the motion to strike, tended to exert an influence on the issue of recoverable damages. As a result of this prejudice, we believe a new trial must be held on the issue of damages. A new trial should be limited, whenever possible, to specific issues. In this case, the issue of damages is distinct from the liability issues which were fairly tried and settled in the Superior Court, and limiting the new trial to the issue of damages will not be unjust to the plaintiff. Indeed, in this instance no challenge has been asserted on appeal on any issue affecting liability. *See Brimbau* v. *Ausdale Equipment Rental Corp.,* 120 R.I. 670, 389 A.2d 1254 (1978); *Labree* v. *Major,* 111 R.I. 657, 678-79, 306 A.2d 808, 820-21 (1973).

The defendant's appeal is sustained and the case is remanded to the Superior Court for a new trial on the issue of damages.

*John D. Lynch,* for plaintiff.

*John G. Carroll, Robert K. Pirraglia,* for defendant.