William E. MAJOR

v.

William L. DRAPEAU et al.

No. 83–538–Appeal.

Supreme Court of Rhode Island.

April 17, 1986.

Robert D. Goldberg, Goldberg Goldberg & Goldberg, Pawtucket, for plaintiff.

Gerard M. DeCelles, Abedon Michaelson Stanzler & Biener, Arlene Violet, Atty. Gen., Thomas Martin/Sheila Tobie Swan, Asst. Attys. Gen., Providence, for defendants.

OPINION

SHEA, Justice.

This appeal involves an action for libel that was tried in the Superior Court. After a jury verdict for the plaintiff, the trial justice granted a new trial. The plaintiff has appealed from that decision, and the defendants have cross-appealed from the trial justice's earlier denial of their motion for a directed verdict. We reverse the granting of a new trial and order an entry of judgment for the defendants.

The plaintiff had been the director of a drug rehabilitation program, located in East Providence, known as the East Bay Human Resources Corporation (EBHRC). This privately run program was under contract to the Rhode Island Department of Mental Health, Retardation, and Hospitals (MHRH). It also received state and federal funds from various grant programs.

The defendants were members of the Rhode Island House of Representatives representing districts in East Providence. The defendants and plaintiff developed an occasionally acrimonious relationship that appears to have begun when the state contract for drug-treatment services was transferred from an agency that defendants supported known as DASH, Inc., to EBHRC. The decline of DASH's fortunes and the ascent of EBHRC was discussed in several newspaper articles that were introduced into evidence by plaintiff. The newspaper articles in evidence related that DASH had closed, apparently as a result of its losing the state contract.

Hostilities between plaintiff and defendants continued. The plaintiff filed a complaint with the Rhode Island Conflict of Interest Commission, claiming that defendants were using their political influence to discredit EBHRC and that they had been conducting a "witch hunt" against it. At one point when defendants called at the EBHRC office intending to inspect its records, plaintiff had arranged for a newspaper reporter to be present. The commis-

sion dismissed this charge after an investigation.

In August of 1978 EBHRC sponsored a theater outing for its clients and families at a cost of a little over $1,550. This expenditure had been approved by MHRH. During the same month that the theater trip was being planned and carried out, EBHRC was being audited by the auditor general of the State of Rhode Island. The audit, it appears, had been requested by defendants. That audit was completed in October 1978, and its report contained a comment under the category of "Expenditures":

> "Examination of expenditures made by EBHRC during fiscal 1978 showed a questionable outlay by the agency amounting to $1558. The purpose of this expenditure was for a theatre party including transportation, meals and consultant fees for approximately 100 clients and their families and 30 friends of EBHRC.
>
> "We question the propriety of expenditures for recreational purposes being part of the function of agencies such as EBHRC.
>
>    \*    \*    \*    \*    \*    \*
>
> "We recommend that MHRH review its policies pertaining to the expenditures of monies for recreational purposes by private grantee agencies funded by MHRH."

After the auditor general's report became public, defendants issued a press release that stated, in part, that the audit had "revealed improper spending of state funds" by EBHRC, specifically, that the agency had "improperly spent $1557.90 of its grant money for entertainment of 132 guests and friends of the agency's executive director, William E. Major." The defendants in their press release went on to say that we "can now understand why Major vociferously resisted previous attempts to have the agency's financial records opened for examination [that] * * * funds awarded under a state grant are * * * for drug treatment * * * and not for the entertainment of Major's friends * * * [and the

outing represented a] misapplication of state/federal funds."

The plaintiff responded by filing suit. The defendants filed a counter-claim alleging malicious prosecution, abuse of process, and libel. The counter-claims were based on the filing of the libel action against them and the earlier complaints made to the State Conflict of Interest Commision.

When we review a trial justice's ruling on a motion for directed verdict, we perform the same function as the trial justice. We view the evidence in the light most favorable to the nonmoving party, without weighing the evidence or assessing the credibility of witnesses, and draw only those inferences that support that party's claim. *Haxton's of Riverside, Inc. v. Windmill Realty, Inc.*, 488 A.2d 723, 725 (R.I. 1985). If there exist issues of fact upon which reasonable minds could differ, the directed verdict must be denied and the decision must be left to the jury. *Id.; Evans v. Liguori*, 118 R.I. 389, 394, 374 A.2d 774, 776 (1977).

In *DeCarvalho v. daSilva*, 414 A.2d 806 (R.I.1980), this court had the opportunity to review at length the major developments in the law of defamation that had begun twenty years or so earlier with the opinion of the Supreme Court in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In that case, the Supreme Court for the first time applied a constitutional test, under the First Amendment, to the common-law torts of libel and slander. *See also Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, — U.S. —, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985). One of the major premises of the law of defamation today is that public officials and public figures cannot recover damages for defamatory falsehoods except on proof that the statement was made with "actual malice." Actual malice means knowledge that the statement was false or reckless disregard of whether or not it was true or false. *Id.* at —, 105 S.Ct. at 2943,

86 L.Ed.2d at 600; *New York Times Co. v. Sullivan*, 376 U.S. at 279–80, 84 S.Ct. at 726, 11 L.Ed.2d at 706. Actual malice must be proved by clear and convincing evidence. *New York Times Co.*, at 285–86, 84 S.Ct. 728–29, 11 L.Ed.2d at 709–10. Under this test, actual malice is not synonymous with common-law spite or ill will; therefore, proof of a corrupt motive, spite, ill will, or general hostility will not satisfy the *New York Times Co.* standard. *Belliveau v. Rerick*, 504 A.2d 1360, 1363 n. 1 (R.I.1986); *DeCarvalho v. daSilva*, 414 A.2d at 811 n. 2. In the trial of a defamation case, a critical determination must be made initally in regard to whether the plaintiff is a public figure or a public official. This is a decision that the trial justice must make. *Id.* at 813; Prosser & Keeton, *The Law of Torts* § 113 at 806 (5th ed. 1984).

■ In the case before us, the trial justice ruled that Major was a public figure. On appeal we must make an independent review of the record to determine the correctness of that ruling. *DeCarvalho*, 414 A.2d at 813. In situations such as this, in which a plaintiff has not achieved such pervasive fame or notoriety that he could be considered a public figure for all purposes, the court must inquire into the nature and extent of the individual's participation in the particular controversy giving rise to the defamation. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352, 94 S.Ct. 2997, 3013, 41 L.Ed.2d 789, 812 (1974). If the individual has "thrust himself into the vortex of this public issue" or has "engage[d] the public's attention in an attempt to influence its outcome," then he or she may, for the limited purpose of that issue, be considered a public figure. *Id.* ·

■ We are of the opinion that this plaintiff made himself a public figure. He actively sought publicity by issuing statements to the press and requesting a newspaper reporter to be present when defendants came for a scheduled appointment at EBHRC headquarters to examine records. Therefore, we conclude that the trial justice's determination that plaintiff was a public figure was correct. At trial plaintiff himself did not contest this determination of his status.

■ Once the determination had been made that plaintiff was a public figure, he was required, under the *New York Times Co. v. Sullivan* standard, to establish by clear and convincing evidence that defendants knew their statements were false or that they made them with reckless disregard for the truth. Reckless disregard is more than mere negligence. The defendants must have acted with a "high degree of awareness" of the probable falsity of their statements or must have "entertained serious doubts as to the truth" of them. *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968).

■ The evidence in this case, considered in the light most favorable to plaintiff, amounts, at the most, to statements that were derogatory and exaggerated. This alone is not sufficient under the actual-malice test. In *DeCarvalho*, the defendant characterized the plaintiff's minor transgression of a Portuguese statute as "scandal upon scandal" and repeated published accounts of the incident that "contained a number of inaccuracies and exaggerations." 414 A.2d at 809. Because of the plaintiff's status in *DeCarvalho* as a public figure, the misrepresentations did not constitute actionable defamation in the absence of a showing of actual malice. This court commented:

"The evidence clearly supported the trial justice's finding that there had been no reckless disregard of the truth. The evidence further established that the defendant entertained no serious doubts about the truth of his assertions. At bottom, the gravamen of the plaintiff's complaint is that the defendant exaggerated the seriousness of the offense. Although the trial justice substantially agreed that the defendant's language was harsh and that the offense was of minor significance, these factors would

not deprive the defendant of the shield furnished by the 'actual malice' test." 414 A.2d at 815.

We are of the opinion that these words from *DeCarvalho* are particularly appropriate to the case before us. There is no evidence that the defendants entertained any serious doubts about the truth of their press release. They did exaggerate the seriousness of the auditor's conclusions that the money was improperly spent and the "theatre outing represented a misapplication of funds." However, there is no evidence of actual malice in the *St. Amant v. Thompson* sense because there is no evidence that the defendants possessed a high degree of awareness of the falsity of their statement, nor is there any proof of serious doubt on the part of the defendants concerning its truth. We note that while

ruling on the motion for a new trial, the trial justice reviewed the evidence and found that there was no evidence of actual malice. In the absence of such evidence, the defendants were entitled to a directed verdict.

For these reasons, the plaintiff's appeal is denied and dismissed, the defendants' cross-appeal from the denial of their motion for a directed verdict is sustained, and the papers of the case are remanded to the Superior Court with the direction that judgment be entered for the defendants.