John GRAY et al.

v.

STILLMAN WHITE CO., INC., et al.

No. 84–466–Appeal.

Supreme Court of Rhode Island.

March 19, 1987.

John Gray, pro se.

Gerard M. DeCelles (Abedon, Michaelson, Stanzlerf & Biener), Robert W. Lovegreen (Gidley, Lovegreen & Sarli), J. Robert Weisberger (Gunning, LaFazia & Gnys), Providence, for defendants.

## OPINION

SHEA, Justice.

This appeal comes before us following the denial of the plaintiffs' motion heard in the Superior Court to vacate judgment pursuant to Rule 60(b)(2) of the Superior Court Rules of Civil Procedure. We affirm.

The relevant facts are not in dispute. The plaintiffs John and Janice Gray, individually and on behalf of their minor son, Justin, filed a complaint in Providence County Superior Court on November 29, 1978, against the defendant Stillman White Co., Inc. (Stillman). The plaintiffs alleged that during the course of John Gray's employment with Stillman, he developed lead poisoning, the effects of which were transmitted to his son, causing Justin to suffer severe physical, mental, psychological, and neurological injuries. The plaintiffs alleged that the direct and proximate cause of their son's injuries was Stillman's negligence through, inter alia, its failure properly to inspect, test, or package materials used in its business; its failure to maintain reasonably safe premises; and its failure to warn its employees of dangerous conditions at work.

The record reveals that John Gray was employed by Stillman for four years as an assistant melter, a job that required him to place metal ingots into a furnace to be melted. The job exposed John Gray to a number of lead-based or lead-coated metal products. It appears to be undisputed that John Gray developed lead poisoning for which he was treated in 1977 and 1978. As a result, he was unable to work and through at least March 1981 was receiving workers' compensation benefits.

The plaintiffs amended their complaint twice, adding defendant Harry Butter and Co. (Butter), a supplier of Stillman's, and including counts of negligence, breach of warranty, and products liability against Butter.

Discovery in this case was prolonged and punctuated by numerous motions to compel and motions to dismiss for failure to comply. In response to Stillman's request for admissions, plaintiffs conceded on September 23, 1982, that, as of that date, they were unable to produce any medical reports from any physician who, having treated Justin Gray or reviewed his medical records, would express an opinion, based on reasonable medical certainty, that a causal relationship existed between Justin's health problems and his father's occupa-

tional disability. The plaintiffs added to this admission, however, that

"[we] are actively researching this matter through an expert and are in possession of materials indicating that there may be a causal relationship between Justin Gray's health problems and John Gray's lead poisoning. Plaintiffs could produce as of this date an expert's report stating to a reasonable degree of medical certainty that lead poisoning in males causes abnormalities in sperm morphology and motility and that it increases the lead content of seminal fluid."

On February 28, 1983, Stillman's motion for summary judgment was heard in the presence of plaintiffs' counsel and an order was entered that stated:

"The plaintiff[s] having admitted that they have no opinion based on reasonable medical certainty that there is any relationship between John Gray's lead poisoning and Justin Gray's health problems, which are the subject of this law suit, the defendant's motion for summary judgment is granted."[1]

On the same day the court also entered a dismissal stipulation signed by plaintiffs' counsel whereby plaintiffs agreed to drop their complaint against Butter.[2]

Throughout these proceedings, from the filing of the complaint through the entry of summary judgment more than four years later, plaintiffs were represented by counsel. The dismissal stipulation was also signed by plaintiffs' attorney.

The plaintiffs did not file an appeal but did file, pro se, several motions for relief from judgment on March 1, 1984, more than one year after the motion for summary judgment had been granted against them. Citing Superior Court Rules of Civil Procedure 60(b) and 62(b), plaintiffs' motions assert as grounds both excusable ne-

glect and newly discovered evidence. Approximately two months after filing these motions, plaintiffs obtained the services of another attorney, who filed an amended motion for relief from judgment. The amended motion included an affidavit dated May 21, 1984, which stated (1) that up until the time of entry of summary judgment, plaintiffs' former legal counsel had told them that none of their son's treating physicians could causally connect his health problems to his father's exposure to lead at work; (2) that because of their dissatisfaction with the order of summary judgment, they initiated their own investigation of their son's problems and accordingly had him examined at Mount Sinai Hospital in New York City; and (3) that, as a result of their investigation, plaintiffs "learned for the first time of a probable connection between John's exposure to lead in his workplace and Justin's lead poisoning."

The plaintiffs also submitted a copy of a letter from Dr. Alf Fischbein of the Mount Sinai Medical Center in New York summarizing his review of medical records and laboratory-test results on Justin. After reviewing several studies regarding the increased risk of lead poisoning in children from a father's or mother's occupation, Dr. Fischbein went on to observe that

"[i]n the absence of any other identifiable cause for Justin's high blood lead levels during 1976–1977, it is likely and consistent with reports in the medical literature that the parental occupation in this case was significant. Mr. John Gray worked at a lead processing plant when his son's lead problem was discovered, and the nature of his work was similar to those trades that have been associated with increased risk of lead exposure to members of the workers' household."

A hearing on plaintiffs' motion for relief from judgment was held on May 31, 1984,

---

**1.** The motion itself does not appear in the record before us, nor is there any indication of it in the file docket sheet. The parties' statement on appeal suggests that it was an oral motion made on the day the case was reached for trial.

**2.** The stipulation merely recites that plaintiffs "hereby dismiss their complaint against defend-

ant Harry Butter & Co., Inc. Judgment shall enter for defendant Harry Butter & Co., Inc. against plaintiffs." In a supplemental affidavit filed on June 6, 1984, more than one year after this dismissal, plaintiffs asserted that this claim was actually in return for $5,000 from Butter, which they have not received.

and a decision was rendered on June 19, 1984, in which the trial justice held that the newly discovered evidence would, with ordinary diligence, have been available at the time of trial and "[t]he fact it has only recently been discovered does not justify a new trial."

Following an order denying plaintiffs' motion, plaintiffs, once again pro se, filed a notice of appeal to this court on July 10, 1984. The case was heard on the show-cause calendar in March 1985. After hearing arguments, this court concluded that plaintiffs had shown cause why their appeal should not be summarily dismissed, and the case was reassigned to the full argument calendar.

On appeal plaintiffs argue essentially two points. First, summary judgment was improperly granted because genuine issues of material fact were present that, plaintiffs assert, causally connect Justin's health problems with his father's occupation. Specifically, plaintiffs allege that John Gray's work clothing was one probable source of Justin's lead contamination. They also appear to contest the entry of the summary judgment on the ground that they did not give their attorney consent to enter into it.

Second, plaintiffs argue that contrary to the trial justice's conclusion, they were duly diligent in obtaining the new evidence in part because it was a major undertaking for them to arrange to have Justin examined in New York.

Stillman argues that plaintiffs' motion for relief from judgment was time-barred because it was filed more than one year after the entry of judgment, in violation of the mandate of Rule 60(b).[3]

Stillman also asserts that no new evidence was introduced that could not have been produced when the case was reached for trial. Finally, Stillman notes that the trial judge had an alternative basis for her denial of the amended motion for relief from judgment. The plaintiffs' motion contains a medical report that, Stillman maintains, fails to establish a causal relationship between John Gray's employment and his son's health problems in terms of probability as opposed to mere possibility and therefore is inadmissible.

 We begin our analysis by noting that the first of plaintiffs' claims, that summary judgment was improperly granted, should have been properly raised on appeal. A motion for relief from judgment cannot be used as a substitute for an appeal. *Pagan v. American Airlines, Inc.*, 534 F.2d 990, 992–93 (1st Cir.1976). Nor can a Rule 60(b) motion be used to circumvent the time limits of an appeal. *Town of Hopkinton v. Keiser*, 122 R.I. 524, 528–29, 409 A.2d 1220, 1223 (1980). An appeal from the denial of such a motion raises for review only the order denying relief and not the underlying judgment. *Pagan*, 534 F.2d at 992–93; *see* 7 Moore's *Federal Practice* ¶ 60.30[1] (1983); 11 Wright & Miller, *Federal Practice & Procedure:* Civil § 2871 at 258–59 (1973). Therefore, to the extent plaintiffs are seeking a direct review of the summary judgment entered on February 28, 1983, their appeal is denied.

The plaintiffs' original motions for relief from judgment were filed on March 1, 1984.[4] Summary judgment was entered on February 28, 1983. Thus, if plaintiffs' motions were filed late, as defendant claims, the motions were late by two days (since 1984 was a leap year). This court has held that the one-year limit for filing motions for relief from judgment under Rule 60(b) is absolute and cannot be extended. *Waldeck v. Domenic Lombardi Realty, Inc.*, 425 A.2d 81, 83 (R.I.1981). *Cf. Reynaud v. Koszela*, 473 A.2d 281, 285 (R.I.1984) (Rule 60(b)'s one-year requirement applicable to Rule 60(b) motions except Rule 60(b)(4) motions claiming judgment void).

---

**3.** Defendant Butter appeared at the hearing on the motion to vacate but has not filed any statement in this appeal.

**4.** The plaintiffs' motions (later consolidated) were dated March 28, 1984. Perhaps plaintiffs were mistaken about the date and intended to write February 28, 1984. In any event, the clerk's stamp indicates that the motions were filed on March 1, 1984.

Although pro se litigants are not entitled to greater rights than are those represented by counsel, *Rubin v. Rubin*, 188 N.J.Super. 155, 159, 457 A.2d 12, 14 (1982), courts have at times allowed greater latitude to them. *See Rodriguez v. Mallory Battery Co.*, 188 Conn. 145, 149–50 n. 8, 448 A.2d 829, 831 n. 8 (1982) (court considered whether trial court abused its discretion in granting defendant's motion for judgment of nonsuit even though pro se plaintiff did not specifically raise or brief issue).

■ Here plaintiffs moving to vacate the summary judgment entered against them are pro se litigants without training or expertise in legal matters and procedure. Although it is the right of plaintiffs to represent themselves, pro se litigants who invoke the complex and sometimes technical procedures of the courts assume a very difficult task. Consequently, our courts have often exhibited leniency and provided assistance to those litigants who have chosen to present their own cases. Nevertheless, the courts of this state cannot and will not entirely overlook established rules of procedure, "adherence to which is necessary [so] that parties may know their rights, that the real issues in controversy may be presented and determined, and that the business of the courts may be carried on with reasonable dispatch." *O'Connor v. Solomon*, 103 Conn. 744, 746, 131 A. 736, 736 (1926); see *Rodriguez*, 188 Conn. at 149–50 n. 8, 448 A.2d at 831 n. 8.

■ In the present case plaintiffs claim that they attempted to file their original motions for relief on February 28, 1984, but were told by the clerk that the motions needed to be certified and that they had until March 1, 1984 to file the motions. Nevertheless, when we look at the record before us, plaintiffs' motions appear to have been filed late in violation of the mandate of Rule 60(b). However, even if the motion was timely filed in this instance, we do not conclude that the trial justice erred in denying it. Motions to vacate a judgment are addressed to the sound discretion of the trial justice, and his or her ruling will not be disturbed on appeal absent a showing of abuse of discretion.

*Phoenix Construction Co. v. Hanson*, 491 A.2d 330, 332 (R.I.1985).

■ The plaintiffs assert that the summary judgment against them should be vacated because of the existence of newly discovered evidence that by due diligence could not have been discovered in time to move for a new trial under Rule 59(b). Super.R.Civ.P. 60(b)(2). However, the "new" evidence that plaintiffs produced, in essence, an opinion letter from Dr. Fischbein, appears to have been equally available to plaintiffs prior to the entry of summary judgment. John Gray had personally consulted Dr. Fischbein at Mount Sinai Hospital in reference to his own lead poisoning in or around September 1978. Moreover, references in Dr. Fischbein's letter to "several studies in the literature" linking lead poisoning in children to their parents' exposure at work do not in any way suggest that those studies constitute either newly discovered evidence or material that was unduly difficult to obtain at an earlier date. Rather, the document submitted appears to have been discoverable, with ordinary diligence, at the time of trial.

Furthermore, even if Dr. Fischbein's report were deemed to be newly discovered evidence, this court has nevertheless consistently stated that "[e]xpert testimony, if it is to have any evidentiary value, must state with some degree of certainty that a given state of affairs is the result of a given cause." *Parrillo v. F.W. Woolworth Co.*, 518 A.2d 354, 355–56 (R.I.1986). It is well settled in this state that when expert medical testimony is offered to establish a causal relationship between a defendant's act or omission and the plaintiff's injury, "such testimony must speak in terms of 'probabilities' rather than 'possibilities.'" *Id.* at 355. Doctor Fischbein's report states that "[i]n the absence of any other identified cause for Justin's high blood lead levels during 1976–1977, it is likely and consistent with reports in the medical literature that the parental occupation in this case was significant." The words "likely" and "consistent with" do not connote "probability." *Evans v. Liguori*, 118 R.I. 389, 397–98, 374 A.2d 774, 778 (1977) (testi-

mony that decedent's symptoms are "consistent with" suicidal intent "merely begs" question of causal relationship). Hence, Dr. Fischbein does not speak in terms of probabilities, and his observations fail to provide the essential evidentiary basis on which proximate causation can be properly assessed. Therefore, regardless of the timeliness of the plaintiffs' motion, this failure to meet the minimum requirements for expert testimony would render the evidence offered by affidavit incompetent and therefore inadmissible had these plaintiffs gone to trial.

For these reasons, the plaintiffs' appeal is denied and dismissed, the order appealed from is affirmed, and the papers of this case are remanded to the Superior Court.

WEISBERGER, J., did not participate.