John H. NORBERG, Tax Administrator

v.

Howard H. FEIST, Jr., et al.

No. 83-236-Appeal.

Supreme Court of Rhode Island.

July 18, 1985.

Perry Shatkin, Chief Legal Officer, Div. of Taxation, Arlene Violet, Atty. Gen., Donald G. Elbert, Jr., Asst. Atty. Gen., Providence, for plaintiff.

Joshua Teverow, Tasca Rotelli & Teverow, Providence, for GECC.

Margot O. Cavalier, Peter G. Berman, Zietz Mittleman & Webster, Providence, for RIHT.

## OPINION

SHEA, Justice.

This appeal from summary judgment entered against the plaintiff, tax administrator, in the Superior Court began as an action against various officers and creditors of the Shepard Company for unpaid sales taxes allegedly owed by the company for the period from May 1973 through September 1973. We affirm.

The material facts in the case are not in dispute. Prior to June 1973 the Shepard Company (Shepard's), which then operated a chain of retail department stores, was indebted to James Talcott, Inc. (Talcott), in a sum in excess of $2 million and to Rhode Island Hospital Trust National Bank (the bank) in a sum of approximately $500,000.[1] These debts were secured by inventory and accounts receivable.

In June 1973 Shepard's, two of its secured creditors, Talcott and the bank, and General Electric Credit Corporation (GECC) entered into agreements whereby GECC purchased from Shepard's at full value all of its existing and future accounts receivable, with Shepard's agreeing to pay GECC a monthly servicing fee for each account serviced. Under the agreements Shepard's employees would transfer on a daily basis to GECC's employees all "charge slips" and other account documents, which were then sent to GECC's offices in Canton, Ohio; GECC retained 10 percent of the accounts paid as a security fund for its service charges and for reimbursement of any customer account that should become uncollectible. Of the remaining 90 percent, 60 percent was paid to Shepard's and 40 percent to Talcott, which in turn paid over a proportion to the bank to reduce Shepard's indebtedness. Shepard's ceased its operations in September 1973 and shortly thereafter filed a bankruptcy petition.

Shepard's is alleged to have failed to pay sales taxes due to the State of Rhode Island for the months of May, June, July, August, and September 1973. As a result of this failure to pay sales taxes, the tax administrator brought suit against various officers and creditors of Shepard's, including GECC, Talcott, and the bank, alleging liability for Shepard's unpaid sales-tax obligations. Upon cross-motions for summary judgment, the Superior Court entered judgment in favor of defendants, GECC, Talcott, and the bank.[2] The tax administrator appeals from that judgment.

---

1. Although Talcott's name has been changed to Leucadia National Corporation since the filing of this action, we shall continue to refer to this defendant as Talcott in order to maintain the consistency of the pleadings.

2. As of the date of judgment on April 4, 1983, the only viable defendants were GECC, Talcott, and the bank.

The statute under which the tax administrator seeks to impose liability is G.L.1956 (1980 Reenactment) § 44–19–35, which in pertinent part provides that

"[a]ll taxes collected by any retailer from purchasers in accordance with the provisions of chapter 18 of this title, and all taxes collected by any retailer from purchasers under color of said provisions, shall constitute a trust fund for the state until paid to the tax administrator. Such trust shall be enforceable against:

(a) such retailer,

(b) any officer, agent, servant or employee of any corporate retailer responsible for either the collection or payment, or both of said tax,

(c) any person receiving any part of such fund without consideration, or knowing that the retailer or any officer, agent, servant or employee of any corporate retailer is committing a breach of trust, and

(d) their estates, heirs, and representatives; provided, however, that a purchaser to whom a refund has been properly made, or any person who receives payment of a lawful obligation of the retailer from such fund, shall be presumed to have received the same in good faith and without any knowledge of the breach of trust."

In short, § 44–19–35 provides that the trust fund shall be enforceable against (1) a retailer who collects taxes from purchasers; (2) officers, agents, servants, or employees of the retailer responsible for collection or payment of the tax; (3) any person receiving any part of the trust fund without consideration; and (4) any person receiving any part of the trust fund *knowing* that the retailer is committing a breach of trust.[3]

The parties do not dispute that defendants, as creditors of Shepard's, do not fit within categories 1 through 3. The tax administrator, however, contends that defendants fit within category 4 and are liable for Shepard's delinquent sales-tax obligations pursuant to § 44–19–35(c) by virtue of their constructive knowledge of Shepard's breach of trust. According to the tax administrator, the granting of defendant's motion for summary judgment was error because the trial justice wrongly applied a rule of strict construction to § 44–19–35 and incorrectly held that subsection (c) of the statute required actual knowledge by defendants.

■ Contrary to the position of the tax administrator, the trial justice was correct in strictly construing § 44–19–35. This statute, like all revenue statutes, must be construed strictly, with doubts about its meaning and scope resolved in favor of the taxpayer and against the taxing authority. *George, Inc. v. Norberg*, R.I., 444 A.2d 868, 870 (1982). Mindful of the above rule, we must determine whether sales-tax liability attaches to defendants by virtue of subsection (c).

■ Subsection (c) of § 44–19–35 makes the trust fund enforceable against persons knowing that a breach of trust is being committed. The clear import of the word "knowing" is actual knowledge, not constructive knowledge. By interpreting "knowing" to mean constructive knowledge, as the tax administrator would have us do, we would be ascribing by implication a meaning to the word beyond its plain meaning. This court has indicated that it will not do this since "the burden of a tax is not to be found by implication [or] conjecture." *Van Alen v. Stein*, 119 R.I. 347, 360, 376 A.2d 1383, 1389 (1977). Accordingly, we conclude that subsection (c) required actual knowledge on the part of defendants that Shepard's had committed a breach of trust.

■ "[S]ummary judgment is a drastic remedy that should be applied cautiously. It is only appropriate under circumstances in which no genuine issue of material facts

---

**3.** A "retailer" is defined under G.L.1956 (1980 Reenactment) § 44–18–15 as every person engaged in the business of making sales at retail for storage, use, or other consumption.

exists." *Brill v. Citizens Trust Company,* R.I., 492 A.2d 1215, 1217 (1985).

■ Our review of the record indicates that there was no genuine issue of material fact that required resolution. Subsection (d) of § 44–19–35 created a presumption that the defendants acted in good faith, without any knowledge of Shepard's breach of trust. Since the tax administrator does not dispute the defendants' lack of actual knowledge, his assertion that the defendants had constructive knowledge is insufficient under the terms of § 44–19–35 to enforce the trust against them. Therefore, the defendants were entitled to judgment as a matter of law.

For these reasons, the plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in the case are remanded to the Superior Court.

The Chief Justice participated in the oral argument and in the decision of the court, but he did not participate in the publication of the formal opinion.