Jack CAPUANO et al.

v.

The OUTLET COMPANY.

No. 89–22–Appeal.

Supreme Court of Rhode Island.

Aug. 16, 1990.

C. Russell Bengtson, Carroll, Kelly & Murphy, Providence, for plaintiff.

Charles J. McGovern, McGovern, Falk, Pannone, Procaccini & O'Leary, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case is before us on the plaintiffs' appeal from summary judgment entered in favor of the defendant by a justice of the Superior Court. In this suit for defamation, the trial justice found that the plaintiffs are limited public figures and that as such, they failed to establish "actual malice" on the part of the defendant as required under *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). We vacate the judgment and remand the case to the Superior Court. The facts insofar as pertinent to this appeal are as follows.

The defendant Outlet Company owns and operates WJAR Channel 10, a television station broadcasting from Providence, Rhode Island. In September 1982, defendant broadcast a news report over Channel 10 concerning an interstate waste-hauling scheme. In substance, the report described how out-of-state waste was being transported to and dumped in the State of Rhode Island and asserted that these activities were carried out under the direction of members of the organized-crime communities from New York, New Jersey and Rhode Island. The plaintiffs allege that during the broadcast, the Channel 10 reporter James Taricani asserted that plaintiffs not only were participants in the alleged waste-hauling scheme, but were also connected with or members of the organized-crime community.

The plaintiffs Jack Capuano, Daniel Capuano and Anthony Capuano[1] owned and operated A. Capuano Bros., Inc. and United Sanitation, Inc., waste collection and disposal companies, as well as Sanitary Landfill, Inc., all of which are located in Rhode Island. The plaintiffs have verified their participation in the collection and disposal of out-of-state waste in Rhode Island, but they maintain that their operations were legal under Rhode Island law at that time. The Providence Journal, a newspaper of general circulation in this state, has also done extensive reporting on this controversy and has often referred to and quoted plaintiffs in the numerous newspaper articles relating to this matter. The plaintiffs have also, from time to time, granted interviews and made statements to the media in connection with the waste-hauling controversy. Moreover, plaintiffs are involved in the ongoing litigation brought in Federal District Court by the State of Rhode Island relating to the allegedly illegal disposal of toxic waste in this jurisdiction.

Although plaintiffs have openly admitted that their business operations have involved the hauling and disposal of out-of-state waste in Rhode Island, they vehemently deny having connections with organized crime. Consequently on October 18, 1982, plaintiffs filed this defamation suit in Providence County Superior Court against defendant Outlet Company, alleging, inter alia, defamation and tortious interference with their business relations due to defendant's September 1982 broadcast. The Channel 10 news reporter James Taricani was not named as a defendant by plaintiffs. In response to plaintiffs' complaint defendant raises the defense of good-faith reliance.

During pretrial discovery, plaintiffs propounded interrogatories to defendant, several of which requested that defendant identify the sources of information supporting Taricani's allegations that plaintiffs are associated with the organized-crime community. The defendant objected to these and other interrogatories, asserting a privilege under the First Amendment to the United State Constitution and a statutory privilege under Rhode Island law. Faced with defendant's refusal, plaintiffs filed a motion to compel answers to their interrogatories, and defendant simultaneously moved for a protective order against disclosing this information. The Superior

1. Anthony Capuano is now deceased and no longer a party to this suit.

Court justice hearing the matter granted plaintiffs' motion to compel answers to certain interrogatories but issued a protective order with respect to the interrogatories requesting that defendant identify its confidential sources and related information. A qualified First Amendment privilege against disclosure was identified by the Superior Court justice as the basis for the protective order.

When plaintiffs deposed the Channel 10 reporter James Taricani, he also refused to reveal his confidential sources, though he did disclose the groups, described as law enforcement officials and waste-hauling truck drivers, from which he derived these sources. Accordingly, a second motion to compel answers to interrogatories was brought by plaintiffs. This second motion was denied on the basis of the statute then in effect, G.L.1956 (1969 Reenactment) §§ 9–19.1–1 through 9–19.1–3, now codified in substantially the same form in G.L.1956 (1985 Reenactment) §§ 9–19.1–1 through 9–19.1–3, the Newsman's Privilege Act. The statute provides news reporters with a limited privilege against disclosure of confidential sources, and the Superior Court justice found that plaintiffs did not come within any exception to the exercise of this privilege.

Thereafter defendant moved for summary judgment, alleging that plaintiffs were public figures and as such had failed to prove "actual malice"[2] as required under the Supreme Court's holding in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The plaintiffs also moved for summary judgment, but only in regard to the issue of their status as public figures. The plaintiffs responded that they are not public figures and therefore should only be held to the negligence standard of proof required of private litigants under *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). The trial justice granted defendant's motion for summary judgment and denied plaintiffs' motion. On appeal to this court plaintiffs raise three issues, each of which is addressed separately below.

## I

### DID THE TRIAL JUSTICE ERR IN FINDING PLAINTIFFS WERE PUBLIC FIGURES?

 In order for a public figure to recover in a suit for defamation, there must be proof by clear and convincing evidence of "actual malice" on the part of the defendant as required under *New York Times Co. v. Sullivan*, 376 U.S. at 279–280, 84 S.Ct. at 726, 11 L.Ed.2d at 706. *See Herbert v. Lando*, 441 U.S. 153, 156, 99 S.Ct. 1635, 1638, 60 L.Ed.2d 115, 121 (1979); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). "Actual malice" on the part of the defendant may be proven by demonstrating either actual knowledge that the published statement was false or a reckless disregard for whether or not it was false. *New York Times Co.*, 376 U.S. at 279–80, 84 S.Ct. at 726, 11 L.Ed.2d at 706; *accord DeCarvalho v. daSilva*, 414 A.2d 806, 812 (R.I.1980). In contrast to the high standard of proof of "actual malice" required of a public figure, the private individual suing for defamation is only held to the ordinary standard of negligence under both federal and Rhode Island law. *Gertz v. Robert Welch, Inc.*, *supra*; *DeCarvalho*, 414 A.2d at 812–13. As an initial matter, this court must first determine whether this case is to be governed by the standard announced in *New York Times*.

 The plaintiffs contend that they were not public figures and should therefore be held to the lesser standard of ordinary negligence. It was the trial justice's duty initially to decide whether plaintiffs were public figures, *see Rosenblatt v. Baer*, 383 U.S. 75, 88, 86 S.Ct. 669, 677, 15 L.Ed.2d 597, 606 (1966), and *Major v. Drapeau*, 507 A.2d 938, 941 (R.I.1986), and he

---

**2.** To distinguish "actual malice" as defined in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) from common law malice, *see DeCarvalho v. daSilva*, 414 A.2d 806, 810–11 (R.I.1980), wherein an analysis of the constitutionalizing of defamation is set forth.

found "that the plaintiffs are 'public figures' for the limited purpose of [the] commentary concerning the waste hauling and disposal business." We have made an independent examination of the record in accordance with *New York Times Co.*, 376 U.S. at 285, 84 S.Ct. at 728–29, 11 L.Ed.2d at 709, and having reviewed the decisions of the Supreme Court of the United States pertinent to this issue, we hold that the trial justice was correct in his determination that plaintiffs are public figures for the purposes of this litigation.

The trial justice relied on the Supreme Court's decision in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), in his determination that plaintiffs are public figures for the limited purposes of this waste disposal controversy. In *Gertz*, 418 U.S. at 345, 94 S.Ct. at 3009, 41 L.Ed.2d at 808, the Supreme Court recognized that an individual may qualify as a public figure for all purposes or only for limited purposes:

> "For the most part those who attain this status [of public figure] have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of issues involved."

In the case at bar, the record shows that plaintiffs have verified their involvement in the alleged interstate waste-collection and disposal scheme reported by defendant. The plaintiffs have denied, however, that their activities were illegal or that they had connections with organized crime. We note that this controversy has been the subject of dozens of newspaper articles. Moreover, plaintiffs have acknowledged

the fact that they have been prominently referenced in these newspaper articles. On occasion, one or more of plaintiffs have consented to be interviewed or made statements to members of the media about their businesses as they relate to this controversy. In this sense, we find that plaintiffs have, by virtue of their business operations and efforts to resolve this matter, injected themselves into the public's eye, if only for the limited purposes of this controversy.[3]

The evidence in this case discloses that the plaintiffs operated one of the major waste disposal enterprises in this state. The record also indicates that the plaintiffs had rubbish collection contracts with at least two Rhode Island municipalities. In this capacity the plaintiffs functioned in the implementation of a quasi-governmental function. *See Arizona Biochemical Co. v. Hearst Corp.*, 302 F.Supp. 412 (S.D.N.Y. 1969). In defining the term public figure, the Supreme Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. at 351, 94 S.Ct. at 313, 41 L.Ed.2d at 812, enunciated the following principles:

> "In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions."

Applying the foregoing principles to the facts of the case at bar, we conclude that the trial justice did not err in finding that the plaintiffs were public figures as that term has been defined in *Gertz*. Whether the plaintiffs injected themselves or were drawn into the public controversy concern-

---

**3.** The plaintiffs also argue, relying on *Time, Inc. v. Firestone*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976), that they have not voluntarily brought attention to themselves relative to this public controversy, and the fact that the media profits from reporting on such topics as landfills and the disposal of waste does not make them public figures. We find plaintiffs' reliance on *Firestone, supra*, misplaced. *Firestone* involved divorce proceedings not of any significance or importance to the public except possibly in a lurid or Barnumesque sense. The waste disposal business, however, is a sensitive topic of great importance to the public regardless of the identities of the parties involved. Moreover, the plaintiff in *Firestone* was not found to be a public figure, either for limited or general purposes.

**474**

ing toxic waste, they were certainly public figures for the issues relating to this litigation.

As we have already stated, we hold under *Gertz, supra,* that plaintiffs are public figures for the limited purpose of this controversy. Thus plaintiffs must demonstrate by clear and convincing evidence that defendant acted with "actual malice" as required by *New York Times Co., supra.* Having found that plaintiffs must meet a rigorously demanding standard of proof, we must now determine whether summary judgment was properly granted where defendant was not required to disclose the confidential sources for its telecast.

## II

**DOES RHODE ISLAND LAW REQUIRE DEFENDANT TO DISCLOSE THE CONFIDENTIAL SOURCES FOR ITS NEWS STORY?**

The plaintiffs brought two separate motions to compel answers to the interrogatories propounded to defendant. Both motions were denied in regard to the interrogatories requesting that defendant identify the confidential sources for the September 1982 telecast. The first motion to compel was denied and a protective order issued on the basis of the application by a Superior Court justice of a qualified First Amendment privilege against disclosure of news sources as developed under federal common law. The second motion was denied on the basis of a finding by a second Superior Court justice that under § 9–19.1–2 the defendant is not required to disclose its confidential news sources. We shall address both these discovery rulings as they relate to the law of this jurisdiction.

## A

### Is There a First Amendment News Source Privilege?

In denying plaintiffs' first motion to compel, the Superior Court justice relied on the fact "that a majority of the lower federal courts have *recognized a qualified* [F]irst [A]mendment news source privilege

in civil cases." In *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the Supreme Court held that in a criminal case a news reporter under subpoena could not refuse to testify about the eyewitness observations of crimes committed while he was gathering news. Our reading of *Branzburg,* together with *Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), leads us to the conclusion that the Supreme Court of the United States has rejected the proposition that there is a First Amendment privilege accorded to newspersons to refuse to disclose information, confidential or otherwise, which is necessary to the determination of a litigated case.

In *Branzburg* the question presented was whether a newspaper reporter was required to disclose information obtained under a promise of confidentiality in the course of his testimony before a grand jury. Although dealing in a criminal context, the Court responded to this question with an emphatic negative. Justice White, speaking for the Court, stated without equivocation, "[W]e are asked to create another [privilege] by interpreting the First Amendment to grant newsmen a testimonial privilege that other citizens do not enjoy. This we decline to do." *Branzburg,* 408 U.S. at 690, 92 S.Ct. at 2661, 33 L.Ed.2d at 644. The force of this rejection is further buttressed by footnote no. 29, which quotes Wigmore and other commentators as condemning the creation of a new testimonial privilege. Some of the lower federal courts have nevertheless construed *Branzburg* to create a qualified privilege. In some instances they have relied upon Justice Powell's concurring opinion. *Id.* at 709–10, 92 S.Ct. at 2671, 33 L.Ed.2d at 656 (Powell, J., concurring). We believe that this reliance is misplaced. A reading of the concurring opinion indicates that Justice Powell was in full agreement with the opinion of the Court as enunciated by Justice White. His concurring opinion merely suggested that the Court's holding should not be construed (as Justice Stewart's dissenting opinion suggested) so that state and federal courts were free to annex the news

media as investigative arms of the government. His opinion could be summed up by the statement that if a newsperson believes that a grand jury investigation is not being conducted in good faith, the newsperson is not without remedy. *Branzburg*, 408 U.S. at 710, 92 S.Ct at 2671, 33 L.Ed.2d at 656 (Powell, J., concurring). Justice Powell went on to observe that if the newsperson's testimony bears only a remote and tenuous relationship to the subject of the investigation or does not pertain to a legitimate need of law enforcement, the newsperson could litigate the issue of being required to disclose confidential sources. These observations could be summarized as setting forth the requirement that the information sought should be both relevant and material. This scarcely creates a testimonial privilege but simply enunciates the basic proposition that a witness may not be harassed in any litigation by questions pertaining only to irrelevant and immaterial issues.

In *Herbert v. Lando, supra,* the Court again declined to create a privilege relating to the secrecy of the editorial process in an action for defamation. Justice White, writing for the majority of the Court, reviewed the history of the constitutional restrictions placed upon actions for defamation by *New York Times Co. v. Sullivan, supra,* and *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct.1975, 18 L.Ed.2d 1094 (1967) (extending the "actual malice" standard to public figures). He suggested that the First Amendment concerns of media defendants were adequately protected by the requirement that defamation plaintiffs must prove by clear and convincing evidence that the published material was either known to be false or published with a reckless disregard of whether it was false or not. He observed that there was no adequate substitute for allowing direct inquiry in order to prove the necessary awareness of probable falsehood. *Herbert v. Lando,* 441 U.S. at 174, 99 S.Ct. at 1648, 60 L.Ed.2d at 132.

Again, Justice White noted that "[e]videntiary privileges in litigation are not favored" and that it would be inappropriate to create an impenetrable barrier to the necessary proof required to meet the *New York Times* standard demanded of a public figure. *Id.* at 175, 99 S.Ct. at 1648, 60 L.Ed.2d at 133. We recognize that in a number of instances lower federal courts, either by reliance upon some language in *Branzburg, supra,* or in the purported creation of a "common law" privilege pursuant to Rule 501 of the Federal Rules of Evidence, have created additional burdens upon defamation plaintiffs to show that they have gone to great lengths to obtain information before they may require disclosure of a newsperson's confidential sources. *See, e.g., Riley v. City of Chester,* 612 F.2d 708, 715 (3rd Cir.1979); *Silkwood v. Kerr–McGee Corp.,* 563 F.2d 433, 436 (10th Cir.1977); *Carey v. Hume,* 492 F.2d 631, 636 (D.D.C.1974); *Baker v. F & F Investment,* 470 F.2d 778 (2nd Cir.1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973); *Zerilli v. Bell,* 458 F.Supp. 26, 28 (D.D.C.1978); *Gulliver's Periodicals, Ltd. v. Charles Levy Circulating Co.,* 455 F.Supp. 1197, 1203 (N.D.Ill. 1978); *Altemose Construction Co. v. Building & Construction Trades Council of Philadelphia,* 443 F.Supp. 489, 491 (E.D. Pa.1977).

Suffice it to say that we are not bound by these decisions and are not persuaded that they should be incorporated into the law of this jurisdiction. The application of such a doctrine to the facts of this case amply demonstrates the futility of such a process. Both defendant Outlet Company and the deposed witness James Taricani have relied upon confidential sources for the published statements that plaintiffs were involved with organized crime. Presumably defendant's knowledge was based upon the knowledge and confidential sources of its investigative reporter. In his deposition Taricani stated that these confidential sources consisted of law enforcement personnel and truck drivers employed by waste-hauling firms. Although the record does not furnish us with the number of those who would be included in such groups, we take judicial notice of the fact that the persons within these classes could number in the hundreds when one considers that the reporter was referring

to law enforcement officers, both state and federal, in at least three jurisdictions. Moreover, to require plaintiffs to depose scores of such individuals before making direct inquiry is an even greater act of futility when one considers that the truly relevant question consists of the information known to defendant and its investigative reporter, not information which may have existed in the abstract.

We are persuaded by the reasoning set forth in *In the Matter Roche*, 381 Mass. 624, 411 N.E.2d 466 (1980), which suggests that requiring a party in need of relevant information to engage in inquiring of the knowledge of sixty-five individuals (the number of potential witnesses at issue in that case) before making direct inquiry is an inappropriate and improper balancing of interests. Similarly the Supreme Court of New Hampshire in *Downing v. Monitor Publishing Co.*, 120 N.H. 383, 415 A.2d 683 (1980), was unwilling to require a defamation plaintiff to make a preliminary showing of falsity before requiring an answer to a relevant and necessary inquiry. Chief Justice Grimes asserted that it was "untenable to impose the heavy *New York Times* burden of proof upon a plaintiff and at the same time prevent him from obtaining the evidence necessary to meet that burden." *Id.* at 386, 415 A.2d at 685–86. The Supreme Court of New Hampshire went on to hold that if a media defendant declined to answer such a question concerning confidential sources, it would be presumed that no such sources existed. *Id.* at 387–88, 415 A.2d at 686.

In our opinion, there is no First Amendment privilege, qualified or otherwise, to allow a media defendant or newsperson to refuse to divulge its, his or her confidential sources and the information obtained therefrom in a defamation action when this information is obviously both relevant and essential to plaintiffs in sustaining their heavy burden of proof. We also reject the proposition that it is necessary for a defamation plaintiff to engage in preliminary futile investigations and depositions before being permitted to ask the questions directly of those whose knowledge and state of

mind are critical to the determination of the issue of "actual malice".

B

### Rhode Island's Statutory Newsman's Privilege

Under the Rhode Island statute, members of the media enjoy a limited privilege against disclosing confidential news sources. Section 9–19.1–2 creates the privilege and reads as follows:

"Nondisclosure of confidential information.—Except as provided in 9–19.1–3, no person shall be required by any court, grand jury, agency, department, or commission of the state of Rhode Island to reveal confidential association, to disclose any confidential information *or to disclose the source of any confidential information* received or obtained by him in his capacity as a reporter, editor, commentator, journalist, writer, correspondent, newsphotographer, or other person directly engaged in the gathering or presentation of news for any accredited newspaper, periodical, press association, newspaper syndicate, wire service, or radio or television station." (Emphasis added.)

The second motion to compel brought by plaintiffs was denied on the basis of a determination by the Superior Court justice that under § 9–19.1–2 defendant is not required to disclose the confidential news sources for the September 1982 broadcast. Under the statute, however, exceptions to the application of the privilege are delineated in § 9–19.1–3. Section 9–19.1–3(b)(1) specifically exempts the application of the privilege in certain defamation cases:

"(b) The privilege conferred by § 9–19.1–2 shall not apply:

(1) To the source of any allegedly defamatory information in any case where the defendant, in a civil action for defamation, asserts a defense based on the source of such information[.]"

The defendant Outlet Company has by its answers to plaintiffs' complaint pleaded a defense of good-faith reliance "based on the [confidential] source[s] of

such information" and thus brings itself within the precise terms of § 9–19.1–3(b)(1). *See Fischer v. McGowan*, 585 F.Supp. 978, 987 (D.R.I.1984). Yet defendant has also refused to disclose the identity of the confidential sources on which its defense of good faith reliance is based. *Id.* at 988 (citing *Brogan v. Passaic Daily News*, 22 N.J. 139, 123 A.2d 473 (1956)). When the plaintiff is required to show by clear and convincing evidence that the defendant acted with malice, we find it impossible to uphold a discovery ruling that denies the plaintiffs the opportunity to examine the confidential sources on which the defendant relies. We are in agreement with the conclusion of the Federal District Court in *Fischer* that "where a defendant pleads a defense of good faith and further testifies that the [defamatory] article was based upon a reliable [confidential] source, the statutory privilege will be deemed to have been waived." 585 F.Supp. at 988; *see Carey*, 492 F.2d at 637.

██ The defendant also contends that the statutory exception to the exercise of the privilege encapsulated in § 9–19.1–3(b)(1) requires that the party against whom disclosure is ordered must be a party defendant. The defendant argues that it is James Taricani who holds and is asserting the privilege under § 9–19.1–2, and because Taricani is not a party defendant but was only a deposed witness, *see Fischer*, 585 F.Supp. at 988, defendant contends that the requirements of § 9–19.1–3(b)(1) have not been met. Therefore, defendant argues, this statutory exception to the assertion of the privilege is not available to require disclosure of the confidential sources. We disagree.

First, we have before us two protective orders which relate only to the assertion of a statutory privilege by defendant in this case. In respect to this appeal we are not concerned with the question of whether James Taricani's assertion of the privilege could be affected or defeated by § 9–19.1–3(b)(1). The plaintiffs sought to depose Taricani as an alternative source of information which they unsuccessfully attempted to elicit through interrogatories propounded to defendant. When Taricani refused to disclose his confidential sources, no coercive sanctions were imposed upon him. His refusal merely forms the basis for argument that plaintiffs were unable to obtain this information from the person who prepared the article. Thus, they might suggest that they made a reasonable effort to inquire from this witness.

In the case at bar, defendant Outlet Company has refused to answer interrogatories relating to the confidential sources upon which it relied. It was this refusal which led to the protective orders. The deposed witness James Taricani similarly has refused to answer questions concerning these sources. However, no judicial ruling on this subject is before us. Consequently there is no significance to be attributed to the fact that Taricani is not a named defendant. The defendant in this case has claimed the statutory privilege. It is not material that another person who is not a party may claim the identical privilege.

### III

### THE PROPRIETY OF SUMMARY JUDGMENT

Both of plaintiffs' motions to compel answers to interrogatories were denied. We find that these rulings effectively eliminated all meaningful discovery for plaintiffs, thereby making it virtually impossible to prove the "actual malice" that is at the heart of their case. *Compare Carey v. Hume*, 492 F.2d 631 (D.C.Cir.1974) *with Cervantes v. Time, Inc.*, 464 F.2d 986 (8th Cir.1972). In preparing to prove their case without the benefit of discovery relative to defendant's confidential sources, plaintiffs in the instant case were faced with an insurmountable task. *See Carey*, 492 F.2d at 637.

As a final matter, defendant alleges that the only real focus of the September 1982 news broadcast was the dumping of waste in Rhode Island, not the activity of members of organized crime. Because plaintiffs have admitted their participation in the waste collection and disposal that was the subject of the Channel 10 report, defen-

dant contends that any other errors or inaccuracies contained therein will not constitute grounds for a claim of defamation by public-figure plaintiffs. *See Bufalino v. Associated Press,* 692 F. 2d 266 (2nd Cir. 1982). Consequently defendant argues that summary judgment was properly granted because it is impossible to demonstrate "actual malice" as plaintiffs' defamation suit is based only on the incidental but possibly inaccurate allegations that plaintiffs are connected with organized crime. With this argument we must disagree.

It cannot be fairly stated that the only focus of defendant's news story was the dumping of out-of-state waste in Rhode Island. In our view, the thrust of the telecast was clearly to underscore the connection between organized crime and the waste disposal in question. James Taricani admits in his deposition that although uncovering organized crime's involvement in the waste-hauling scheme was not his sole purpose in developing the story, it was certainly one of his *main* purposes. It is therefore clear that defendant's statements alleging plaintiffs had connections with organized crime were not incidental remarks. Consequently we hold that the allegedly defamatory statements broadcast are a sufficient basis on which plaintiffs may assert a claim of defamation actuated by malice on the part of defendant.

We have frequently held that a grant of summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure is a drastic remedy. *Ouimette v. Moran,* 541 A.2d 855 (R.I.1988); *Rustigian v. Celona,* 478 A.2d 187, 189 (R.I.1984); *Steinberg v. State,* 427 A.2d 338, 338–40 (R.I.1981). Such a remedy should be granted only under circumstances in which there is no issue of material fact to be found. *Norberg v. Feist,* 495 A.2d 687 (R.I.1985); *People's Trust Co. v. Searles,* 486 A.2d 619 (R.I.1985); *Ludwig v. Kowal,* 419 A.2d 297, 301 (R.I.1980). In the case at bar the foreclosing of discovery on the vital issue of defendant's knowledge relating to the truthfulness or falsity of the defamatory publication made it impossible for the trial justice to determine whether there was an issue of fact presented concerning the existence or nonexistence of "actual malice". Consequently the granting of summary judgment in the context of this case was erroneous.

To summarize, we affirm the trial justice's determination that for the purposes of this litigation the plaintiffs are public figures and are to be held to the *New York Times* "actual malice" standard. We sustain the plaintiffs' appeal from the entry of summary judgment by reason of the fact that the plaintiffs' discovery into the defendant's confidential sources was inappropriately truncated by the misapplication of the purported constitutional or statutory news reporter's privilege. This made it virtually impossible for the plaintiffs to prove under any standard that the defendant acted with "actual malice".

For the reasons stated, the plaintiffs' appeal is denied in part and sustained in part. The summary judgment entered in Superior Court is hereby vacated, and the papers in the case may be remanded to the Superior Court for proceedings consistent with this opinion.