DECISION
Plaintiff, Stephen Alves (Alves) represents the 19th Senatorial District in the Rhode Island General Assembly and also serves on the Town of West Warwick School Building Committee. Both Defendants, Alan Palazzo (A. Palazzo) and William Palazzo (W. Palazzo) are members of the general public residing in Kent County. A. Palazzo lives in the Town of West Warwick while W. Palazzo lives in the Town of Coventry.
On November 16, 2001, Alves filed a defamation suit against Defendants, A. Palazzo, W. Palazzo and the Hometown Newspapers, Inc. d/b/a The Kent County Daily Times (Daily Times). The complaint is set forth in nine counts. Count one alleges that A. Palazzo libeled Plaintiff in a letter to the editor of the Daily Times, which letter was published on October 1, 2001. Count two alleges that W. Palazzo libeled Plaintiff in a letter to the editor of the Daily Times, which letter was published on October 8, 2001. Count three alleges that A. Palazzo libeled Plaintiff in a letter to the editor of the Daily Times, which letter was published on October 9, 2001. Count four alleges that W. Palazzo libeled Plaintiff in a letter to the editor of the Providence Journal, which letter was published on November 5, 2001. Counts six through nine allege that the aforementioned letters contained false and fictitious facts which placed Plaintiff in a false light before the public. Count five alleges that A. Palazzo slandered Plaintiff at a Town of West Warwick School Building Committee meeting on September 26, 2001.
Defendants, A. Palazzo and W. Palazzo responded to the complaint by filing a motion to dismiss pursuant to Rule 12(b)(6). Defendants contend that Plaintiff's complaint is barred by the Limits on Strategic Litigation Against Public Participation Act, the so-called anti-SLAPP statute, R.I.G.L. § 9-33-1, et seq. The contested motion was first heard on January 28, 2002. At that time, the Court determined that the motion should be considered as a motion for summary judgment, not as a motion to dismiss. See Hometown Properties, Inc. v. Fleming, 680 A.2d 56, 63 (R.I. 1996). The Court continued the motion to give the parties a reasonable opportunity to reply to it as a motion for summary judgment. Super R. Civ. P. 56; Laurence v. Sollitto, 788 A.2d 455 (R.I. 2002). Defendants also based their motion to dismiss on the grounds that Plaintiff's complaint fails to set forth actionable claims against Defendants for either defamation or false light based upon the applicable statutory and common law.
While the motion for summary judgment was pending, Plaintiff filed an amended complaint. The allegations in the amended complaint are unchanged except that Plaintiff identifies the specific statements contained in each letter that allegedly constitute libel and hold him in a false light.
A. Palazzo designated his letters as the "second" (October 1, 2001) and "fourth" (October 9, 2001) "in a series of informational updates relative to our Town Council and SBC's handling of the `Natick' School project."
In his October 1, 2001 letter, A. Palazzo "cautioned" West Warwick taxpayers about the potential increased cost of the Natick school project from $10.5 million to $12 million. Additionally, he invited the Town Council to comment on "the possibility of a separate bond for land acquisition." He inquired whether the proposed estimates would affect residents' tax rates. Further in the letter, Defendant questioned the propriety of spending $1.5 million for a school site. He urged the tax payers to become concerned about the issue. He stated, "it is your hard earned tax dollars that are being spent in this manner. Yes, we need a new school but perhaps you might ask Mr. Rouselle, Sen. Alves, Ms. DiMasi et al., why the fiasco?"
As it relates to the October 1, 2001 letter, Plaintiff bases his amended complaint on the following statements:
 "I've also heard from a member of the Council that Sen. Alves seems to be exerting a lot of pressure to keep this project moving along . . . I challenge anyone involved with this project today, especially Mr. Rouselle, Sen. Alves and Ms. DiMasi to deny the facts as I have presented them." Amended Complaint, Count I, paragraph 9.
In his October 9, 2001 letter to the editor, A. Palazzo continued to criticize the cost of the Natick school project. He challenged the propriety of using an alternative site for the new school and questioned whether the Town "really looked at the site from a Geo-technical perspective." Defendant claimed that the Town was paying $425,000 more for a Construction Manager than was noted at a November, 2000 School Building Committee meeting. He also noted the additional costs associated with engaging Eric Ahlborg to serve as Construction Manager on the Natick School project. Additionally, A. Palazzo mentioned that the Council President, Mr. Rouselle, was the guest of honor at a recent fund-raiser hosted by Alves.
As it relates to the October 9, 2001 letter, Plaintiff bases his amended complaint on the following statements:
 "At several SBC and Town Council Meetings, I've noticed what I'd call a `close' relationship between Sen. Alves and Mr. Eric Ahlborg. If you have attended some of these same meetings, you may have also taken note of this. Has anyone on our Council also taken note and asked some hard questions? Given the progress of this project to date and the possible additional costs to the taxpayers, isn't it prudent to at least ask? . . .
 Think about it — could it be possible that the taxpayers of this town are being used to bankroll and advance the personal and financial agendas of a `chosen few'? . . .
 I challenge anyone involved with this project to date, especially Mr. Rouselle, Sen. Alves and Ms. DiMasi, to deny the facts as I have presented them." Amended Complaint, Count III, paragraph 23.
W. Palazzo's letters to the editors of the Daily Times and the Providence Journal do not relate to any particular issue under consideration by a legislative, executive or judicial body or any other governmental proceeding. In the letters, W. Palazzo attacked Alves charging a variety of allegedly wrongful conduct committed over a period of years.
In his letter of October 8, 2001, W. Palazzo wrote that the "saga continue[d]" with Plaintiff's association with Todd J. LaScola and mentioned that LaScola was convicted of embezzling money from clients in security fraud schemes. Citing articles from the Providence Journal from March, 1999 to May, 2001, Palazzo stated that LaScola was in Plaintiff's "inner circle of friends and a golfing companion." Defendant wrote that Plaintiff attempted to divert $10 million in West Warwick pension money to LaScola's investment company, CPI Investment Management, by "sidestepping the bidding process."
He continued as follows:
 "For the past decade Sen. Alves has had a continuous history of shady dealings and reveled in his association with financial hoodlums. He has abused his political position for self-enrichment with complete and total disregard for the people that elected him while laughing his way to the bank. If a person is known by the company he keeps . . . you can certainly draw your own conclusion."
In his letter of November 5, 2001, W. Palazzo wrote that Plaintiff was "once again pushing the envelope on impropriety and having his usual difficulty differentiating between black and white. I'm referring of course to his [Alves'] remarks concerning `invitations' sent to town employees for a `fund-raiser' in honor of Town Council President Jeffrey [sic] Rousselle."
W. Palazzo purportedly quoted Alves as saying he "can't possibly imagine anyone feeling pressured to buy tickets."
W. Palazzo referred to Alves' "total disregard of ethics and morality". He stated that the former mayor of Warwick, on his last day in office, granted Plaintiff's financial services company a $1.2 million account handling Warwick municipal employees' pensions. W. Palazzo wrote:
 "another good buddy of Senator Alves, the infamous Mayor Brian Sarault of Pawtucket, pressured the city's then finance director . . . to funnel over $1 million of municipal pension money into Senator Alves' company in a scheme similar to Warwick's."
W. Palazzo concluded his letter of November 5, 2001 by stating, "If this is the type of people representing us in the General Assembly . . . God help us all."
As it relates to the October 8, 2001 letter, Plaintiff bases his amended complaint on the following statements:
 "In a previous letter I discussed the pillage of the Warwick and Pawtucket municipal pension funds by Sen. Alves and his buddies ex-Mayors Flaherty and Sarault . . .
 He has abused his political position for self-enrichment with complete and total disregard for the people that elected him while laughing his way to the bank . . .
 What makes the acts even more heinous is the fact that he sits on the Senate Finance Committee (Vice Chairman), a position where he can really sink his teeth into financial malfeasance . . ." Amended Complaint, Count II, paragraph 16.
As it relates to the November 5, 2001 letter, Plaintiff bases his amended complaint on the following statements:
 "He (Senator Alves) has abused his political position for self-enrichment with complete and total disregard for the people who elected him, yet shows no remorse or recognition of the problems in his behavior . . .
 What makes these acts even more heinous is the fact that he sits on the Senate Finance Committee, a position where he can really sink his teeth into financial malfeasance." Amended Complaint, Count IV, paragraph 30.
In both his original and amended complaints, Plaintiff alleges that A. Palazzo slandered him "on or about September 26, 2001 . . . while speaking at the Town of West Warwick School Building Committee Meeting." Complaint, Count V, paragraph 30; Amended Complaint, Count V, paragraph 34. Plaintiff does not set forth the substance of the slanderous statements in either complaint.
Defendant denies that he spoke at the September 26, 2001 meeting and submits minutes from the meeting which support his denial. (Memorandum in Support of Defendants' Motion to Dismiss, December 19, 2001, Exhibit 1.) Plaintiff does not present any evidence to support the contention that A. Palazzo spoke at the meeting, but instead submits affidavits from Jeanne-Marie DiMasi, Chairwoman of the West Warwick School Building Committee. She states that "after" the meeting, she heard A. Palazzo claim that Alves had "rigged" the bids on the Natick School Project. (Affidavits of DiMasi, December 26, 2001 and February 12, 2002.) Defendant attests that he left the meeting early due to family obligations. (Affidavit of A. Palazzo, March 16, 2002.)
The parties each submitted memoranda and supplemental memoranda in support of their respective positions. Counsel appeared before the Court on March 8, 2002 and presented oral argument on Defendants' motion for summary judgment and on Plaintiff's objection thereto. The Court continued the case to March 14, 2002 for decision.
 STANDARD OF REVIEW
Summary judgment is a drastic remedy that should be sparingly granted only when the pleadings, affidavits, and discovery materials demonstrate no genuine issue of material fact exists. Superior Boiler Works, Inc. v. R.J. Sanders, Inc., 711 A.2d 628, 631 (R.I. 1998); R.I. Super R. Civ. P. 56(c). The trial justice should draw all reasonable inferences in favor of the nonmoving party and must refrain from weighing the evidence or passing upon issues of credibility. Id. However, the nonmoving party has an affirmative duty to set forth specifically all facts demonstrating a genuine issue of material fact. Sisters of Mercy of Providence, Inc. v. Wilkie, 668 A.2d 650, 652 (R.I. 1996). As such, the nonmoving party may not rest upon allegations or denials in the pleadings, mere conclusions, or mere legal opinions to create a genuine issue of fact.
Rhode Island DEPCO v. Rignanese, 714 A.2d 1190, 1193 (R.I. 1998). After reviewing the evidence in the light most favorable to the nonmoving party, the trial justice may grant summary judgment if there are no genuine issues of material fact, and the moving party's claim warrants judgment as a matter of law. Harritos v. Cambio, 683 A.2d 359, 360 (R.I. 1996); R.I. Super. R. Civ. P. 56(c).
 APPLICABLE LAW
Defendants' motion is based in part on R.I.G.L. § 9-33-1, et seq. In 1993, the state legislature passed the Limits on Strategic Litigation Against Public Participation Act, the so-called anti-SLAPP statute. The purpose of the act was set forth clearly and unambiguously:
 "The legislature finds and declares that full participation by persons and organizations and robust discussion of issues of public concern before the legislative, judicial, and administrative bodies and in other public fora are essential to the democratic process, that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances; that such litigation is disfavored and should be resolved quickly with minimum cost to citizens who have participated in matters of public concern." R.I.G.L. § 9-33-1.
The anti-SLAPP statute affords a party conditional immunity from civil suit if he or she is exercising his or her right of petition or of free speech under the United States or Rhode Island Constitutions. The immunity will apply as a bar to any civil claim directed at petition or free speech except if the petition or speech constitutes a sham. The petition or free speech constitutes a sham only if it is not genuinely aimed at procuring favorable government action, result or outcome, regardless of ultimate motive or purpose. The petition or free speech will be deemed to constitute a sham only if it is both:
 objectively baseless in the sense that no reasonable person exercising the right of speech or petition could realistically expect success in procuring the government action, result or outcome; and
 subjectively baseless in the sense that it is actually an attempt to use the governmental process itself for its own direct effects. R.I.G.L. § 9-33-2 (a) (emphasis added).
In order to fall within the purview of the anti-SLAPP statute, the speech or petition must constitute a "written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body or any other governmental proceeding; or any written or oral statement made in connection with an issue of public concern." R.I.G.L. § 9-33-2 (e).
Once the Defendant demonstrates that the published statements meet the definition of free speech or petition contemplated by R.I.G.L. § 9-33-2
(e), the burden shifts to the nonmoving party to show that the published statements constitute a sham. See Morse Brothers, Inc. v. Webster,772 A.2d 842, 849 (Me. 2001); Donovan v. Gardner, 740 N.E.2d 639, 642 (Mass. App. 2000); Zeller v. Consolini, 758 A.2d 376, 387 (Conn. App. 2000).
The Rhode Island Supreme Court has interpreted this statute in at least four different cases. See Hometown Properties Inc. v. Fleming, 680 A.2d 56
(R.I. 1996); Global Waste Recycling, Inc. v. Mallette, 762 A.2d 1208
(R.I. 2000); Pound Hill Corporation, Inc. v. Perl, 668 A.2d 1260 (R.I. 1996); Cove Road Development v. Western Cranston Industrial Park Associates, 674 A.2d 1234 (R.I. 1996).
The Court has upheld the constitutionality of the statute; has addressed the two prong test necessary to overcome the immunity; and has determined that making loud and public complaints to newspapers can constitute petitioning activity. See Global Waste Recycling, Inc., 762 A.2d at 1211-1213. However, the Court has not yet decided a case where the speech complained of was not made in connection with an issue under consideration or review by a governmental body. None of the cases have rested solely on an interpretation of the scope of the catch-all phrase in R.I.G.L. § 9-33-2 (e) that the speech or petition is entitled to qualified immunity if it constitutes "any written or oral statement made in connection with an issue of public concern." In each of the cases decided, the activity included statements made concerning matters under consideration by a governmental body.
In Hometown Properties Inc. v. Fleming, landfill owners sued a local resident for tortious interference with contractual relations and for defamation. Defendant had submitted written statements to state and federal officials concerning potential environmental concerns resulting from plaintiff's landfill activities. The Court determined that the anti-SLAPP statute applied. The statements were made to an executive and legislative body in connection with an issue under consideration or review by DEM and addressed an issue of public concern, namely potential environmental contamination.
In Global Waste Recycling, Inc. v. Mallette, a facility for recycling construction and demolition debris sued neighbors alleging that they had made defamatory statements to newspaper reporters about their operation. The Court affirmed the motion justice's grant of summary judgment. The hearing justice noted that pollution and environmental contamination are matters of public concern, and the recycling facility had been the subject of DEM proceedings and was also addressed in a petition presented to the local town counsel.
The Court quoted the hearing justice at great length:
 "`Making loud and public complaints to newspaper reporters is a frequently used method for members of a community to affect local matters of interest or concern. Members of the public and residents of neighborhoods often use the news media as a forum for communicating their concerns to whatever governmental authorities may have an interest in or power over the matter at hand. This method is frequently successful in achieving a response from local town administrators to governors, to legislators, to presidents. Concerning the American experience, it's undoubtedly realistic to expect some success in securing a governmental response when this method is utilized.'"
Global Waste Recycling, Inc., 762 A.2d at 1211-1212. In Pound Hill Corporation v. Perl, Defendant attempted to thwart Plaintiff's efforts to obtain an amendment to a zoning ordinance to allow for residential development of Plaintiff's real estate. Plaintiff had purchased the property after the seller had first refused to sell it to Defendant. After the town council approved the amendment, Defendant undertook a baseless and relentless effort to hinder and delay Plaintiff from developing its land. Plaintiff sued for tortious interference with prospective contractual relations and for abuse of process. The Court rejected Defendant's claim that the suit was barred by the anti-SLAPP statute and found that there existed a genuine issue of fact whether the petitioning activity constituted a sham. It was arguable that no reasonable litigant would have realistically expected success on the merits of Defendant's challenge. Additionally, a finder of fact might determine that the activity was subjectively baseless and was actually an attempt to use the governmental process itself for Defendant's own purposes.
In Cove Road Development v. Western Cranston Industrial Park Associates, Plaintiff sought a zoning change so it could develop residential housing on its property. A neighboring industrial park association prosecuted an unsuccessful court challenge to the zoning change arguing that it violated Cranston's comprehensive zoning plan and constituted illegal spot-zoning. Plaintiff sued the association for abuse of process and malicious prosecution. Examining the case under the provisions of the anti-SLAPP statute, not under the common law elements of the tort alleged, the Court affirmed summary judgment in favor of defendants. The Court noted that Defendant's activities did not rise to the level of frivolity displayed by the Defendant in the Pound Hill case.
The anti-SLAPP statute emulates the federal Noerr-Pennington doctrine. United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); Global Waste Recycling, Inc., 762 A.2d at 1211. The United States Supreme Court developed the Noerr-Pennington doctrine in the context of antiturust litigation to protect the legitimate exercise of the First Amendment right to petition the government without risking retributive civil claims brought by those alleging harm as a result of the petitioning activity. Hometown Properties, Inc., 680 A.2d at 60. The Rhode Island Supreme Court has adopted the Noerr-Pennington doctrine and has applied it to tort cases. Id. "Like the Noerr-Pennington doctrine, the anti-SLAPP statute was adopted in order to protect valid petitioning activities." Id. at 61.
Under Rhode Island law, the rules of procedure permit liberal pleadings and normally do not require a plaintiff to set forth the precise legal theory upon which the claim is based. The complaint should provide the defendant with fair and adequate notice of the claims asserted against him or her. R.I. Super R. Civ. P. 8; Bresnick v. Baskin, 650 A.2d 915
(R.I. 1994). However, a complaint alleging either libel or slander must set forth the substance of the defamation. Riverhouse Publishing Co. v. Porter, 287 F. Supp. 1 (D.R.I. 1968); Kenyon v. Cameron, 20 A. 233,17 R.I. 122 (1890).
In a defamation action, whether the meaning of the words published constitutes defamation is a question of law for the Court to decide. It is not a factual issue to be decided by the jury. Beattie v. Fleet National Bank, 746 A.2d 717, 721 (R.I. 2000). Expressions of opinion enjoy constitutional protection. Id.; Gertz v. Robert Welch, Inc.,418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). A defamatory publication that 12 consists of a statement in the form of opinion is actionable if it implies "`the allegation of undisclosed defamatory facts as the basis for the opinion.'" Beattie, 746 A.2d at 722, quoting, 3 Restatement (Second) Torts, § 566 at 170. Regardless of whether the opinion expressed is unjustified or even unreasonable, it may not support a defamation action if it is based on disclosed or assumed nondefamatory facts. Id. at 722. However, if the statements contain other elements of a defamation claim, they may be actionable even if they include expressions of opinion. Id. at 723.
 "[W]hen a speaker outlines the factual basis for his conclusion, his statement is protected by the First Amendment . . . because the bases for the conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related."
Id. at 724, quoting, Partington v. Bugliosi, 56 F.3d 1147, 1156 (9th Cir. 1995).
The plaintiff in a defamation action must prove that the defendant published a false and defamatory statement about him. Beattie v. Fleet National Bank, 746 A.2d at 721. An ordinary citizen claiming defamation must prove: (1) a false and defamatory statement concerning plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) damages, unless the statement is actionable per se. Western Mass. Blasting Corp. v. Metropolitan Property and Casualty Insurance Co., 783 A.2d 398, 403 (R.I. 2001). However, for a public figure to recover in a suit for defamation, he or she must prove by clear and convincing evidence that the defendant published the statements with actual malice. Actual malice in this context must be proven by demonstrating either actual knowledge that the statements were false or that they were made with reckless disregard for whether or not they were false. Capuano v. Outlet Co.,579 A.2d 469, 474 (R.I. 1990); New York Times Co. v. Sullivan,376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). A public figure who contends that the published statements were made with actual malice will not meet his or her burden by merely proving common law spite, ill will, corrupt motive or general hostility. Major v. Drapeau, 507 A.2d 938
(R.I. 1986). In Capuano, 579 A.2d at 478, the Court reversed summary judgment for defendant in a defamation case involving a public figure where the plaintiff was not given the opportunity to conduct meaningful discovery to prove actual malice. The Court stated:
 "foreclosing of discovery on the vital issue of defendant's knowledge relating to the truthfulness or falsity of the defamatory publication made it impossible for the trial justice to determine whether there was an issue of fact presented concerning the existence or nonexistence of `actual malice'."
Capuano, 579 A.2d at 478. Restatement of the Law, Second, Torts, § 652E addresses the right of action against one who gives publicity to a matter concerning another that places the other before the public in a false light. It is based upon the theory that a person has the right to privacy. General Laws § 9-1-28.1 establishes a cause of action for the violation of the right to privacy and provides, in pertinent part:
 "(4) The right to be secure from publicity that reasonably places another in a false light before the public;
 (i) In order to recover for violation of this right, it must be established that:
 (A) There has been some publication of a false or fictitious fact which implies an association which does not exist;
 (B) The association which has been published or implied would be objectionable to the ordinary reasonable man under the circumstances . . ." (emphasis added.)
To recover under this section, a plaintiff must receive "unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position." Swerdlick v. Koch, 721 A.2d 849, 861 (R.I. 1998), quoting, Restatement (Second) Torts, § 652E cmt. b, at 395. The published statement must contain "such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." Id., at 861-862, quoting, Restatement (Second) Torts, § 652E cmt. c, at 396. (emphasis added.)
 ANALYSIS
The Court distinguishes between the averments set forth in the amended complaint pertaining to A. Palazzo's letters to the editor of the Daily Times from the allegations against W. Palazzo with respect to his letters to the editors of the Daily Times and the Providence Journal. The Court will also address separately the allegations of slander against A. Palazzo.
With respect to A. Palazzo's letters to the editor of the Daily Times, it is clear that the activity was of a type envisioned by the Legislature in enacting R.I.G.L. § 9-33-1 et seq. In Global Waste Recycling, Inc., 762 A.2d at 1211-1212, the Court concluded that speaking to a newspaper reporter is a frequently used method for members of the general public to communicate concerns to governmental authorities who are considering or reviewing a matter of public concern. The term "in the public" is not limited to a physical setting, but includes other forms of public communication, such as letters to the editor. See Damon v. Ocean Hills Journalism Club, 102 Cal.Rptr.2d 205, 85 Cal.App.4th 468 (Cal. 2000). Letters to the editor provide "a vehicle for communicating a message about public matters to a large and interested community." Id. at 211.
Plaintiff has the burden of proving that A. Palazzo's letters were both objectively and subjectively baseless. Plaintiff specifically complains about only a few statements contained in those letters. He alleges that the following statements libeled him and placed him in a false light:
 "I've also heard from a member of the Council that Sen. Alves seems to be exerting a lot of pressure to keep this project moving along . . . I challenge anyone involved with this project today, especially Mr. Rouselle, Sen. Alves and Ms. DiMasi to deny the facts as I have presented them." Amended Complaint, Count I, paragraph 9.
 "At several SBC and Town Council Meetings, I've noticed what I'd call a `close' relationship between Sen. Alves and Mr. Eric Ahlborg. If you have attended some of these same meetings, you may have also taken note of this. Has anyone on our Council also taken note and asked some hard questions? Given the progress of this project to date and the possible additional costs to the taxpayers, isn't it prudent to at least ask? . . .
 Think about it — could it be possible that the taxpayers of this town are being used to bankroll and advance the personal and financial agendas of a `chosen few'? . . .
 I challenge anyone involved with this project to date, especially Mr. Rouselle, Sen. Alves and Ms. DiMasi, to deny the facts as I have presented them." Amended Complaint, Count III, paragraph 23.
Although Plaintiff bases his action on a few statements lifted from the letters, the Court must consider the publications in their entirety to determine whether they rise to the level of sham. In his letters, A. Palazzo addressed a matter that was under review and consideration by a local governmental body. The statements addressed an issue of public concern in his community. He sent the letters to the editor of a local newspaper. A. Palazzo expressed concern over the potential increased cost of the Natick school project. His statements concerning Plaintiff related to his position as a School Building Committee member and his alleged role with respect to the project. The Plaintiff has failed to demonstrate that the letters were objectively baseless in the sense that no reasonable person making those statements could have realistically expected success in procuring the government action, result or outcome.
Having failed to prove that the published statements were objectively baseless, Plaintiff cannot pursue a defamation action or an action based on false light against A. Palazzo based upon his letters to the editor. The motion for summary judgment is granted as to Counts one, three, six and eight in Plaintiff's Amended Complaint.
Defendant, A. Palazzo seeks an order awarding him costs and attorney's fees pursuant to R.I.G.L. § 9-33-2(d). That section mandates that the Court award the prevailing party costs and reasonable attorney's fees. Since the Court grants A. Palazzo's motion as it relates to Counts one, three, six and eight based upon the application of the anti-SLAPP statute, with respect to those claims, Defendant's motion for costs and attorney's fees is granted. Counsel shall present the appropriate affidavit to support Defendant's request for fees and costs.
Turning to W. Palazzo's letters to the editors of the Daily Times and the Providence Journal, it is less clear that the statements were of a type envisioned by the Legislature in enacting the anti-SLAPP statute. They do not address an issue of public concern before a legislative, judicial, or administrative body. The Court notes that Alves was not running for re-election in 2001, and the published statements were not made in connection with a political campaign. It may be argued that the definition of free speech and petition set forth in R.I.G.L. § 9-33-2
(e) is so broad that it covers all statements that they are made "in connection with an issue of public concern" regardless of whether they relate to a matter under consideration or review by a governmental body. However, the purpose of the anti-SLAPP statute is clear and unambiguous. It was enacted to encourage and support "full participation by persons and organizations and robust discussion of issues of public concern before the legislative, judicial, and administrative bodies and in the public fora." R.I.G.L. § 9-33-1. It does not provide qualified immunity to all published statements about a public official regardless of whether or not they are made with the expectation of achieving success in procuring government action, result or outcome. The Court finds that W. Palazzo's letters to the editors of the Daily Times and the Providence Journal are not the type of speech covered by the anti-SLAPP statute.
Plaintiff complains of certain statements contained in W. Palazzo's letters.
From the October 8, 2001 letter, Plaintiff alleges that the following statements are actionable:
 "In a previous letter I discussed the pillage of the Warwick and Pawtucket municipal pension funds by Sen. Alves and his buddies ex-Mayors Flaherty and Sarault . . .
 He has abused his political position for self-enrichment with complete and total disregard for the people that elected him while laughing his way to the bank . . .
 What makes the acts even more heinous is the fact that he sits on the Senate Finance Committee (Vice Chairman), a position where he can really sink his teeth into financial malfeasance . . ." Amended Complaint, Count II, paragraph 16.
From the November 5, 2001 letter, Plaintiff asserts that the following statements are defamatory:
 "He (Senator Alves) has abused his political position for self-enrichment with complete and total disregard for the people who elected him, yet shows no remorse or recognition of the problems in his behavior . . .
 What makes these acts even more heinous is the fact that he sits on the Senate Finance Committee, a position where he can really sink his teeth into financial malfeasance." Amended Complaint, Count IV, paragraph 30.
The published statements accuse Plaintiff of dishonesty, lack of integrity and conflict of interest, all of which could support an action for defamation if the Plaintiff can prove the remaining elements of his case. If W. Palazzo's letters are mere expressions of opinion, they may enjoy constitutional protection. Beattie, 746 A.2d at 722; Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Regardless of whether Palazzo's expressed opinions are unjustified or even unreasonable, they may not support a defamation action if they are based on disclosed or assumed nondefamatory facts. Beattie, 746 A.2d at 722. However, if the statements contain other elements of a defamation claim, they may be actionable even if they include expressions of opinion. Id. at 723. If Palazzo relies on a factual nondefamatory basis for his conclusions, his statements are protected by the First Amendment. Id. at 724. Accordingly, to the extent that Palazzo is expressing an opinion based upon an accurate reading of nondefamatory facts contained in past issues of the Providence Journal, his speech is protected.
Additionally, Plaintiff is a public figure. To recover in his claims of defamation against Defendant, he is required to prove by clear and convincing evidence that the defendant published the statements with actual malice. He must prove that W. Palazzo had either actual knowledge that the statements were false or that they were made with reckless disregard for whether or not they were false. Capuano v. Outlet Co.,579 A.2d 469 (R.I. 1990); New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).
It may be very difficult for Plaintiff to overcome the obstacles in his path and prevail on his claims against W. Palazzo for defamation. It may be likewise difficult for him to prevail on the claims of false light. Nonetheless, it is too soon to grant summary judgment against him with respect to those allegations. Plaintiff must be given an opportunity to develop his allegations through discovery. See Capuano, 579 A.2d at 478.
W. Palazzo's motion for summary judgment is denied without prejudice.
Lastly, the Court considers the allegations that A. Palazzo slandered Plaintiff while speaking at a School Building Committee Meeting on September 26, 2001.
Plaintiff's amended complaint fails to specify the substance of the slanderous statements allegedly spoken by Palazzo. Although the Rules of Civil Procedure permit notice pleading, in a defamation action, the plaintiff is required to plead the substance of the statements complained of. Riverhouse Publishing Co. v. Porter, 287 F. Supp. 1 (D.R.I. 1968); Kenyon v. Cameron, 20 A. 233, 17 R.I. 122 (1890).
Additionally, the nonmoving party defending a motion for summary judgment must set forth specifically all facts demonstrating a genuine issue of material fact. Sisters of Mercy of Providence, Inc., 668 A.2d at 652. He may not rest on the pleadings to create a genuine issue of fact. Rhode Island DEPCO v. Rignanese, 714 A.2d at 1193. Not only did Plaintiff fail to offer any evidence to rebut Defendant's contention that he did not speak at the meeting, Alves actually offered affidavits suggesting that Defendant did not make the alleged defamatory statements at the meeting, but made them after the meeting.
Defendant denies that he made the alleged statements and denies that he was even present when Plaintiff's affiant claims to have overheard him speak. However, the Court does not weigh credibility on a motion for summary judgment. Nonetheless, Plaintiff's amended complaint does not allege that Defendant slandered him after the meeting was completed. There is no genuine issue as to a material fact as to whether Defendant spoke at the meeting as alleged in the amended complaint. Accordingly, the Court grants Defendant's motion for summary judgment with respect to Count five, the allegation that he slandered Plaintiff at a meeting of the School Building Committee on September 26, 2001.
 CONCLUSION
For the foregoing reasons, the motion of A. Palazzo for summary judgment as to Counts one, three, six and eight is granted. In accordance with the provisions of R.I.G.L. § 9-33-2(d), Defendant is awarded costs and reasonable attorney's fees. Counsel for Defendant shall submit the appropriate affidavit and evidence of costs and fees incurred.
The motion of A. Palazzo for summary judgment as to Count five is granted. The motion of W. Palazzo for summary judgment as to Counts two, four, seven and nine is denied without prejudice.
Counsel shall present an order consistent with this decision.